HON. ASA O. ALDIS,
HON. JAMES BARRETT, } *Assistant Judges.*
HON. LOYAL C. KELLOGG,

---

## JOHN W. TRACY *v.* ALONZO ATHERTON ET AL.

*Presumption. Adverse Possession. Incorporeal Right. Estoppel. Infancy.*

The presumption, unrebutted, arising from the adverse possession of an incorporeal right continued for so long a time as is fixed by statute as a bar to the recovery of land held adversely, is a presumption of *law*, and is conclusive evidence, or sufficient evidence to warrant the court in holding that it confers a right on the possessor to the extent of his use.

An adverse use of an incorporeal right having once commenced, will not be interrupted by the descent of the servient close to an infant.

A right of way having become established by adverse use, will not be divested by an application for, and obtaining of a license to use it from the other party.

But it would be strong evidence to show that the previous use was not under a claim of right.

If a party writes a letter to a neighbor, asking permission to cross his lots, not referring to the way in question, but to a different way, it would be no admission against the party's right to use this way, although the neighbor supposed this to be the one referred to.

TRESPASS ON THE FREEHOLD. Plea, the general issue and a special plea justifying the trespass under an alleged private right of way, and also a highway. Trial by jury, April Term, 1862, PIERPOINT, J., presiding.

The testimony tended to show that one Penniman was the owner of a piece of land, adjoining the close described in the declaration, from some time prior to the year 1828, until June, 1854, when he sold and conveyed it to one Batchelder; that Batchelder sold and conveyed it to Barber, about the year 1858; and that at the time of the committing of the trespasses in question, the defendants were jointly occupying said land under a contract with Barber for its purchase. That prior to the year 1828, one Jones was the owner of the close mentioned in the declaration, and remained so until the 5th of November, 1833, when, with the knowledge of Penniman, he sold and conveyed it, by deed of warranty, to Griswold W. Tracy, the plaintiff's father, who continued to own and occupy it until the time of his decease, on the 7th of September, 1837. It did not appear that Penniman was present when the deed was executed, or that he knew that the conveyance was by deed of warranty. That at the decease of Griswold W. Tracy this close descended to the plaintiff as heir of Griswold W., and that he has ever since continued to be the owner of it. That at the time of the decease of Griswold W., the plaintiff was a minor, and remained so until the 27th of September, 1853, when he arrived at majority. That for many years prior to the year 1828, there was a public and open highway leading through the close described in the declaration, and through the land so owned by Penniman, which highway was discontinued and fenced up in the summer of 1828, and has so remained ever since. That at or about the time of the discontinuance of this highway, and as a part of the arrangement for throwing up the highway, Penniman having no other means of access to his land, it was orally agreed between Penniman and Jones, that if it was discontinued, Penniman should always have the privilege of passing from the main road to and from his land over the land of Jones, at the place where the highway then was, and in as ample a manner as he had before.

That Penniman, his tenants and grantees, down to the time the Penniman lot passed to the defendants, were in the habit frequently, as they had occasion, of passing over the *locus in quo* with teams, cattle and sheep, without asking or obtaining permission and without any express assertion of a right so to do, but under a claim of right; and that they kept this way in repair.

It appeared that in October, 1837, Mrs. Sarah Tracy, plaintiff's mother, (who, from the time of the death of her husband, always lived with the plaintiff,) was appointed guardian of the plaintiff, and acted as such during his minority; and it also appeared that on the 24th of December, 1850, Penniman wrote and caused to be delivered to Mrs. Tracy, the following letter, to wit:

DECEMBER 24, 1850.

Mrs. Tracy—*Madam.* My men that are drawing wood, wish to go through your lots. If you will let them pass, I will pay you any reasonable sum you or your neighbors may say.

Respectfully, A. H. PENNIMAM.

The testimony of Mrs. Tracy, who was called as a witness by the plaintiff, tended to show that she supposed, from the letter itself, that it had reference to the place where the highway formerly crossed the close mentioned in the declaration, and where Penniman and his tenant had been accustomed to pass. But Penniman testified that the letter referred to a different place, and that a different place was used on that occasion. The plaintiff's testimony further tended to show that soon after the conveyance by Penniman to Batchelder, the plaintiff gave permission to Barber, (who had the principal care of the Penniman lot for Batchelder while he owned it,) to take cattle and sheep across the plaintiff's land upon the application of Barber, and refused to grant any privilege to one of the defendants soon after they commenced occupying the Penniman lot.

The plaintiff's testimony further tended to prove that the defendants had driven their stock across the *locus in quo* daily previous to the commencement of this suit.

The defendants evidence tended to show that their use, and that of those under whom they claimed, was always adverse, continuous, without license and under a claim of right, and applied to any species of use connected with the use of the farm.

33

The plaintiff requested the court to charge the jury (among other things,) that the infancy of the plaintiff, from the time he became the owner of the *locus in quo* until the 27th of September, 1853, would, if the fact was found, operate as an interruption of the adverse uses of the way by Penniman, and that in determining the question of a prescriptive right to the easement claimed by the defendants, only the time which elapsed after the plaintiff's majority could be considered. Or that if such infancy did not wholly defeat the effect of the previous uses of the way by Penniman, the time during which the infancy existed should be deducted from the whole time of user, and that if after such deduction the adverse enjoyment of the way had not continued for fifteen years, no right could be presumed.

That every renewal of a license to pass across the plaintiff's land at the place in question; every application for such renewal, by the defendants or those preceding them in the chain of title to the Penniman lot, and every admission by the defendants or by their predecessors in the title to said lot, that the use of the way in question had been by the license, consent or indulgence of the owners of the servient close, would conclusively rebut the presumption of a grant; and that the previous enjoyment of such way had been under a claim of right, however long such previous enjoyment might have continued.

The court declined so to instruct the jury, except as follows:

The court instructed the jury particularly as to what it was necessary for the defendant to prove, to establish in himself the right of way claimed; to which no exception was taken.

The court told the jury that if Penniman, while he owned the farm now owned by the defendant, and before the right of way had become established and vested in the owner of such farm, applied for and obtained a license from the owner or occupier of the Tracy lot, to pass over the place in question, such fact would prevent his acquiring a right of way by any subsequent user, and defeat the claim now set up by the defendant; and the same would be the case in respect to any other owner of said farm. But if the jury found that the right had become established and vested in the owner of said farm by such a use of the way, and for such a period as the court has told them was necessary, a

subsequent application, by such owner, for leave to pass over the place in question, and a license given accordingly, would not divest the right and defeat the claim. But that in determining whether the right had become established, such an application, made after the lapse of the required period, would be an important matter for them to consider, in determining whether the use of the way had been of such a character as the court had told the jury was necessary to establish the right. That if Penniman, in his letter of the 24th of December, 1850, referred to a different place from the way in question, such an application would have no effect in this case, even though Mrs. Tracy supposed he referred to the place in question.

The plaintiff excepted to the refusal to charge as requested, and to the charge as above detailed.

*M. L. Bennett* and *E. R. Hard*, for the plaintiff.

1. The county court committed an error in wholly disregarding the fact of the plaintiff's infancy. The right to an easement resulting from its enjoyment for fifteen years, rests upon the presumption of a grant. This presumption is one of *fact* and not of law. 2 Wash. on R. P. 40.

And as an infant or other person under a disability is incapable of making a legal grant, or of legally acquiescing in the adverse use, the disability rebuts the presumption which might otherwise arise. And a supervening disability interrupts the period of adverse use claimed. 2 Wash. on R. P. 42–48 ; Wash. on E. & S. 110–116 ; *Melvin* v. *Whiting*, 13 Pick. 184 ; *Watkins* v. *Peck*, 13 N. H. 360 ; *Lamb* v. *Cleveland*, 4 Rich. 536 ; G. & W. on E. 117 (star paging) ; *Jackson* v. *Pierce*, 10 Johns. 414 ; *Bailey* v. *Jackson*, 16 *ib*. 210 ; *Dunlap* v. *Ball*, 2 Cranch. 180.

The cases arising under statutes of limitation should not control the decision of the question here presented, because these decisions were made under statutes which contained either an express or a clearly implied provision that a disability, to be effectual, must exist at the time the right of entry *first* accrues to the plaintiff or to the person under whom he claims.

But the statute of this state of 1797, if any, must govern in

the present case—and this contains no such provision, either expressed or implied, but clearly extends the benefit of the disability to a person to whom the title descends after the adverse use has commenced. In Kentucky it has been held that a supervening disability arrests the operation of the statute.

2. The court should have instructed the jury as requested in respect to a license to pass across the plaintiff's land. G. & W. on E. 126; 2 Wash. on R. P. 45; *Arbuckle* v. *Ward*, 29 Vt. 43; 3 Phil. Év. (C. & H. notes) 504.

3. The court erred in its charge to the jury in respect to the letter of Penniman to Mrs. Tracy. 2 Wash. on R. P. 43.

*George F. Edmunds* and *J. French*, for the defendants.

The court below correctly refused to charge the jury as requested in respect to the effect of the plaintiff's infancy upon the adverse use of the way. When an adverse use has once commenced nothing amounts to an *interruption* of it, so as to prevent its ripening into a title after fifteen years, except some positive act done by the owner or occupant of the servient close to vindicate his own right and in denial of the claim of the party so using adversely. The right acquired by adverse use under a claim of right has nothing whatever to do with a grant, or the presumption of a grant. It is a title in analogy to the statute of limitations. *State* v. *Wilkinson*, 2 Vt. 480; *Johns* v. *Stevens et al.*, 3 Vt. 308; *Whitney* v. *French*, 25 Vt. 663; *Elmendorf* v. *Taylor*, 10 Wheat. 168; *Reimer* v. *Stuber*, 20 Penn. St. 458; *Rogers* v. *Bancroft*, 20 Vt. 250; *Mayor* v. *Chadwick*, 39 E. C. L. 169; *Corning* v. *Gould*, 16 Wend. 531; *Hall* v. *McLeod*, 2 Met. (Ky.) 98, cited in 2 U. S. Dig. 766, title Prescription.

The decisions as to the effect of disabilities arising after the statute has commenced running, should control the decision of this case. The reason is the same in both cases. When the statute of limitations has once commenced running it runs over all subsequent disabilities, and intervening acts and events. Angell on Limitations 480; 2 Parsons on Cont. 374; *Smith* v. *Clark*, 1 Wils. 134; *Bailey* v. *Jackson*, 6 Wheat. 210; *McFarland* v. *Stone*, 17 Vt. 174; *Demonest* v. *Wynkoop*, 3 J. C. 129;

Tracy *v.* Atherton et al.

*Fleming* v. *Griswold*, 3 Hill, 85 ; *Dow* v. *Warren*, 6 Mass. 328 ; *De Kay* v. *Darrah*, 2 Green. (N. J.) 294 ; —— v. *Selden*, 1 How. 37 ; *Carlisle* v. *Stilter*, 1 Penn. St. 6 ; *Renken* v. *Tinbrook*, 6 Watts, 388 ; *Walden* v. *Gratz*, 1 Wheat. 292 ; *Clerk* v. *Cross*, 2 R. I. 440 ; *Lynch* v. *Cot*, 23 Penn. St. 268. At common law infancy, insanity, &c., are not recognised at all as disabilities which prevent an adverse use from ripening into a title. It is only in analogy to the statute that they stand on any different grounds from persons *compos mentis*, &c. *Doe* v. *Jones*, 4 Term, 301. Therefore, if the infant has the benefit of his minority to prevent the operation of the use in cases excepted by the statute, he must take with it the accompanying construction, which does not prevent the operation of the use when it commences before the existence of the disability. Reeves Dom. Rel. 262 ; Cro. Eliz. 636 ; *Tyler* v. *East Ind. Co.* 3 P. Will. 309 ; *Griffin* v. *Griffin*, 1 Sch. and Lef. 352. The charge of the court in respect to the application to pass over the place in question was more favorable to the plaintiff than he was entitled to. *Miller* v. *York et al.* 8 Barb. 183. The instructions of the court in reference to to Penniman's letter to Mr Tracy of December 24th, 1850, were correct.

Poland, Ch. J.    The great question in this case is, what effect the infancy of the plaintiff has upon the right of way claimed to have been acquired over the plaintiff's land, by the defendants and their predecessors in title, by prescription, or adverse possession for a period of more than fifteen years. It is now claimed that the jury should have been directed to find on the evidence whether the adverse use of the way began before the land descended to the plaintiff, and should have been instructed on the law of the case on the theory of finding that the adverse use began after the land descended to the plaintiff, and during his infancy. But it appears from the case that the testimony tended to show that the use of the way began as early as 1828, by Penniman, and under a claim of right, in pursuance of the agreement made when it was discontinued as a highway. It does not appear that any evidence was given tending to contra-

dict this ;   indeed it rather appears that this commencement of
the use was shown by the plaintiff's own evidence.   None of the
requests made by the plaintiff's counsel to the court point to any
such state of the case, so that we can only consider this as one
of those common efforts to raise a question in this court on ex-
ceptions, which was not made at all in the court below.

It must be taken  then, under the finding of the jury, that the
use of the way began before the estate descended to the plaintiff,
and that it was  continued under a claim of right, and without
interruption, for more than fifteen years ; but that during this
period the title came to the plaintiff, who was an infant, and so
continued from 1837 to 1853 ; so that, if the plaintiff was right
in his request, that the jury should be charged that only the
time after the plaintiff became of age should be reckoned, there
was nothing for the jury to consider, and if he was right in his
request that the period of his nonage should be deducted, then
the jury should have been directed to find whether the use of the
way before, and after the disability, was sufficient to make the
requisite period.

We understand the case to have been submitted to the jury on
this ground : that if the adverse use of the way began during
the life of the plaintiff's father, or his grantor, and was continued
for the period of fifteen years, without interruption, the right
was acquired, though before the expiration of the fifteen years
the land over which the way was used, descended to the plaintiff,
who was an infant.

The question arises on the correctness of this instruction.
The statute of limitations does not extend to these incorporeal
rights, but it has now become universally settled that an unin-
terrupted use of a way or other easement, under a claim of right,
for the period of time fixed by the statute as a bar to the
recovery of lands held adversely, gives the person so using it a
full and absolute right to such easement, as much as if granted
to him.  This has been  settled by a long course of judicial de-
cisions, and is founded primarily on the ancient doctrine of pre-
scriptions, but has finally by the courts been made to conform,
by analogy, to the statute of limitations applicable to lands, in

Tracy v. Atherton et al.

all substantial particulars, so far as the difference in the subjects will allow.

The general language of the books, found in innumerable cases, is that from such a possession, continued for the period of the statute, the law will presume a grant, or courts will direct juries to presume a grant. But this is purely a legal fiction. The doctrine proceeds wholly upon the ground of presuming a right after such length of possession, and not at all upon the ground that there ever was a grant made, but which has been lost, and though it may be shown ever so clearly that no grant was ever made, the case is not at all varied.

A great deal of learning has been expended upon the question whether, in such case, the presumption arising from the length of possession is a presumption of law, or one of fact, and all the cases on the subject have been industriously brought to our attention in the argument of this case.

The counsel for the plaintiff say that this presumption of a grant from such long possession is a presumption of fact, to be found by a jury from such possession, unless rebutted, and that therefore any evidence which tends to show that no such grant was made, or could have been made, is admissible, and should be submitted to the jury. If it were true that such was the real ground upon which these rights are sustained, the view of the counsel would be unanswerable. But the counsel themselves do not claim that this grant which is presumed is anything but mere fiction. The true view of the subject is well stated by WILDE, J., in Coolidge v. Learned, 8 Pick. 504. He says: "It has long been settled, that the undisturbed enjoyment of an incorporeal right affecting the lands of another for twenty years, the possession being adverse and unrebutted, imposes on the jury a duty to presume a grant, and in all cases juries are so instructed by the court. Not however, because either the court or jury believe the presumed grant to have been actually made, but because public policy and convenience require that long continued possession should not be disturbed."

It is said in many of the cases that this length of possession is only evidence to be submitted to the jury. If by this is meant,

that where it is conceded or proved that there has been an uninterrupted possession under claim of right for the requisite time, and this is not encountered by any evidence to rebut the legal effect of it, that it is a proper question to be submitted to the jury to say whether this gives a right, or not, it is not in our opinion correct.

If there be any conflict of evidence as to the length, or character of the case, or any evidence proper to rebut the acquiring the right, it then becomes proper to submit it to the jury. But where it stands solely upon the conceded or proved possession under claim of right for the requisite time, it is never submitted to a jury to find the right established or not, according to their judgments. And whether it is more proper for the court to tell the jury that it is their duty from this to presume a grant, or to tell the jury that from this the law presumes a grant, is mere idle speculation. In fact, and in substance, it is a verdict directed by the court, as a matter of law. And if it were submitted to the jury, and they were to return a verdict against the right, no court would ever accept the verdict.

Mr. WASHBURN, who reviews all the decisions on the question whether the presumption to be drawn from possession or use of an easement for the required time, is one of law, or one of fact, and who gives the weight of his opinion in favor of its being a presumption of fact for the jury, after all, says : " It may, therefore, be stated as a general proposition of law, that if there has been an uninterrupted user and enjoyment of an easement, a stream of water for instance, in a particular way, for more than twenty-one, or twenty, or such other period of years as answers to the local period of limitation, it affords conclusive presumption of right in the party who shall have enjoyed it, provided such use and enjoyment be not by authority of law, or by or under some agreement between the owner of the inheritance and the party who shall have enjoyed it." Wash. on Eas. &c. 70.

In the case of *Townsend* v. *Downer*, 32 Vt. 183, ALDIS, J., in giving the judgment of the court, says : "When from long possession, with or without auxiliary circumstances, a grant is presumed as *matter of law*, and without regard to the fact whether

such a grant was really made or not, then it may with the strictest propriety be said that the law presumes a grant. In such a case, under the practice in this state, it would be the duty of the court to direct a verdict."

He then proceeds to speak of the class of cases where lapse of time and long possession is relied on with other circumstances, as evidence to establish that a grant has been made in *fact*. The opinion then proceeds: "We do not understand that there is still a third class of cases in which, although the grant is not presumed by the court as pure matter of law, and is not found by the jury as a fact, still the court may direct the jury to presume a grant, and thus by the intervention of the jury, but without the exercise of their judgment upon the evidence, establish the grant as if it were a mere inference of the law. Language may be found in some books and decisions favoring such a view, but the doctrine is clearly against the whole current of English and American decisions, and tends to confound the proper and separate jurisdictions of court and jury. This erroneous view, we think, has arisen from the want of precision in language, when treating of presumptive evidence and the grants proved by or presumed from it."

We think therefore, that in substance the presumption arising from such long continued possession, unrebutted, is a presumption of *law*, and that it is conclusive evidence, or sufficient evidence to warrant the court in holding that it confers a right on the possessor to the extent of his use.

But it does not in our opinion go very far in determining the question in this case, whether the presumption arising from the length of possession is one of law, or one of fact, for whichever it may be it is liable to be rebutted in various ways. It may be shown to have originated or continued by leave of the owner; that it has not been under a claim of right, or not continuous ; or that it has been interrupted by the owner of the land, and whenever any evidence is introduced tending to invalidate the right claimed, on any of these grounds, that the case becomes a proper one to submit to the jury.

But all authorities concur in saying that this doctrine has been

adopted and rests upon its analogy to the statute of limitations applicable to lands, and both parties in the present case agree that the effect of the plaintiff's disability upon the right claimed by the defendants, is precisely the same that it would be upon lands of the plaintiff holden adversely by the defendants, and their predecessors in title, during the same period. And in our judgment rights to easements acquired by long possession ought to stand on the same ground as rights by possession in lands. The real principle underlying the right, is the same precisely on which the statute of limitations stands. In the first place, it is presumed that one man would not quietly submit to have another use and enjoy his property for so great a length of time unless there existed some good reason for his doing so, and that after allowing it for so long, he should not call upon him to show his right or title, when it may not be in his power to do so ; and in the second place, it is a rule of policy, adopted in support of long and uninterrupted possession. It is important too in another view, that the doctrine of the law in the two cases should harmonize, that the people may not be misled and perplexed by having the law different ways upon subjects which in reason, and upon principle should be the same.

The requisites of a possession by which an easement is acquired, as generally laid down in the books are, that it should be adverse, under a claim of right, exclusive, continuous and uninterrupted. These are exactly the requisites of a possession of lands to give a title under the statute of limitations against the proprietor. But it is sometimes said that the possession must be with the acquiesence of the owner. But this is the same as saying that the possession must be *uninterrupted.* If the owner does not interrupt the possession in any way, he does acquiesce as far as is needful in order to make the possession effectual against him. In the case of lands which are wholly in the possession of a disseisor, in order to make an effectual interruption of the possession, the owner must actually make an entry on the land for that purpose. In *Powell* v. *Bragg*, 8 Gray 441, it was decided, that where the owner of the land, over which another had laid an acqueduct, and claimed to have acquired a

right by possession upon the land, forbid the owner of the acqueduct from entering upon the land to use the acqueduct, this was such an interruption of the use as prevented the acquirement of an easement right. The owner of the land being already in possession, could not make an entry to stop the effect of the user, or possession, and his act on the land, of for-bidding the other to enter and use the aqueduct, was all he could do to prevent him unless he resorted to force, and ordinarily the law does not require one to use force to assert his rights.

In the case of an entry on land to interrupt the acquiring a right by a disseisor, the owner is not required to use force in order to give legal effect to his entry.

It is not necessary to determine whether such an interruption as was shown in *Powell* v. *Bragg* would be sufficient to stop the effect of a previous use toward acquiring a right by prescription, but the decision is founded apparently on a sound distinction between an actual adverse possession of lands, and a mere ease-ment upon lands, of which the owner himself is in the actual possession.

Under the English statute of limitations, passed as early as the reign of James 1st, it was uniformly held that disabilities, in order to prevent the operation of the statute, must exist at the time the right first accrued.

This statute of James has been the foundation of similar stat-utes in this country generally, and though its precise language has hardly ever been adopted, still, the same construction has been generally followed by American courts. The only instance of so wide a departure from the English statute as to induce a different construction in this respect, is in the state of Kentucky. But the saving in the Kentucky statute is in favor of those "who are or shall be infants, &c., at the time when the said right or title accrues or comes *to them.*" The counsel for the plaintiff claim that our statute of limitations of 1797, varies so widely from the English as to require a different construction in this respect, and one similar to that given by the Kentucky court to theirs.

The Act of 1797 limits rights of entry into lands, and actions

for the recovery of lands, to fifteen years next after the right
shall accrue to the plaintiff or those under whom he claims.
Sec. 10 provides, generally, that it shall not apply to infants,
&c., but they shall be allowed to sue within fifteen years after
the removal of the disability.    It does not say, in terms, that
the rights of those disabled when the right *first* accrued shall be
saved, as does the English statute.    Neither does it, in terms,
save the rights of those who shall be infants, &c., when the right
accrues or comes *to them.*

But the question cannot be regarded as an open one in this
state.    In *McFarland, Adm'r of Burdick* v. *Stone,* 17 Vt. 174,
the question came before the court.    The action was ejectment
to recover lands of which Burdick died seized.    The defendant
had been in possession more than fifteen years before suit brought
claiming title.    The plaintiff claimed to avoid the statute on the
ground of the disability of the heirs.    Two of the heirs were
infants at the decease of their father, and fifteen years had not
elapsed after they became of age before the suit was brought,
and the plaintiff was allowed to recover for their shares of the
land.    Two other female heirs were infants when the defendant
entered upon the land, and before they become of age were
married, and so continued till suit brought, so that they had
been constantly under disability during the whole period of de-
fendants' possession.    The statute had not run in favor of
defendant when the disability of coverture intervened, but more
than fifteen years had run after they became of age, before suit
brought.

It was decided that their rights were bound by the statute, and
the court held that our statute should have the same construc-
tion as the English, and that no disabilities could be regarded as
within the saving, except such as existed at the time the right
*first accrued.*    If the plaintiff's claim is well founded, that the
intervening of a disability, before the statute has run, arrests it,
and entitles the party to fifteen years longer after the disability
is removed to sue, then the plaintiff should have recovered the
shares of the two female heirs.    They could not be in a worse
condition after the disability of coverture arose, in consequence

Tracy *v.* Atherton et al. ·

of having been all the previous time under the disability of infancy, than they would have been, if before the coverture they had been legally competent to sue, or the right had been in some one else who was competent.   The real point in the case was the same made here, viz : Must disabilities, in order to be within the saving of the statute, exist when the right first accrues?—and was fully decided.   It was stated in argument by Judge BENNETT, that the statute of 1797, was always understood by the courts, and men of eminence in the legal profession in the state, to be different from the statute of James in this respect.   Judge BENNETT's long experience at the bar, and upon the bench, entitles his statement to great consideration, but the strictest search has not enabled us to find any trace of such an opinion in our reports, and the case of *McFarland* v. *Stone*, where the contrary was decided, was tried by Judge BENNETT, and his ruling was affirmed in the supreme court.   So far as we have any knowledge of professional tradition on the subject, the general understanding has been that when the statute of limitations, once began to run, no subsequent intervening disability would arrest it.

Our present statute of limitations is made to conform exactly to the English, by confining the saving of disabilities to such as exist at the time the cause of action accrues, but no one has ever supposed that the law in this respect was changed from what it was under the act of 1797.   Indeed the change of phraseology has been made by revisers, and for the purpose of making the language more exactly express the meaning as judicially determined.

The decisions in relation to the statute applying to personal actions are all in the same direction.   *Hill* v. *Jackson*, 12 Vt. We are satisfied therefore, that by the settled construction of the statute of limitations, a disability in order to prevent the operation of the statute must exist when the right *first accrues*, and if the analogy of the statute in this respect is to be followed, it must govern this case.   And we see no reason why it should not be in this particular, if in any, as it stands upon the same reason and is governed by the same policy.

The cases that have been cited bearing upon this particular point are contradictory, and no uniform principle seems to have been followed in deciding them. *Melvin* v. *Whiting*, 13 Pick. 134, is cited by the plaintiff. It was an action for disturbing the plaintiff's fishery. The plaintiff claimed a right to the fishing by long continued use or prescription. It appeared that after plaintiff's possession commenced the title under which defendant claimed, became vested in some infant heirs. It was held that the period of minority should be deducted, but as the plaintiff's possession, before the commencement, and after the expiration of the disability, added together, made the requisite length, according to the statute of Massachusetts, the plaintiff's right was held to be established, and he was allowed to recover. The case seems to have been very little examined by court or counsel, no reasons are given, or authorities cited.

*Watkins* v. *Peck et al.*, 13 N. H. 360, is also cited by plaintiff.

This was a case in chancery involving in controversy the right to draw water by aqueduct from a spring. In this case also, during the use from which the right was claimed, the title had descended to minor heirs, and it was held that this interrupted the prescription. Judge PARKER, who gave the opinion, says that such a right by long possession rests upon the presumption of a lost grant, and that it would be absurd to presume a grant, where it was clear that no such grant could have existed.

It would almost seem that the distinction between the class of cases where the question is whether there has been a *grant* or *deed in fact*, and those where this presumption is a *mere legal fiction*, was not perfectly clear to so eminent a judge as Judge PARKER.

*Lamb* v. *Crossland*, 4 Rich. S. C. 536, is also cited by Prof. Washburn, as supporting the same doctrine, but I have not seen the case.

On the other hand the case of *Reimer* v. *Stuber*, 20 Penn. St. 458, where a right of way was claimed by prescription, and sought to be avoided on the ground of disability, the use began during the minority of the owner of the land, and who before she became of

age was married, it was held that the time began to run when she became of age, notwithstanding the subsequent disability of coverture. If the case stood really upon the ground of a presumed grant, and it could not be presumed because the owner was under a disability, and could not make a grant, it must extend through both disabilities. The case can stand only upon the analogy of the statute. In that view it is clearly correct.

*Mibane* v. *Patrick*, 1 Jones N. C. 23, was a claim by the plaintiff that he had acquired a right of way by use. After the use began the owner of the servient estate became insane. It was decided that as the disability did not exist at the time of the commencement of the plaintiff's adverse use, it did not prevent the use ripening into a right. The court say "such being the law as to the statute of limitations, it follows it must be so, in regard to prescriptions also." The language of Judge STORY in *Tyler* v. *Wilkinson*, 4 Mason 402, in this respect goes even beyond what we are disposed to hold, indeed disabilities coming clearly within the saving of the statute, would not avoid a prescription, according to the most general interpretation of his language. But doubtless it was not intended by him to bear so broad a meaning. Prof. Washburne in his treatise on Easments says, "Perhaps the difference in the provisions of the statutes of limitations in the different states, may account for the discrepancy in the decided cases." But they can hardly be reconciled on such a basis. In both Massachusetts and New Hampshire, it is fully settled, that under their statutes of limitations no disability avoids their operation, unless it exist at the time the right *first accrues*. The decisions in those states must have been made in entire disregard of the analogy of the statute in this respect, and we think they were made by giving undue importance to the fictitious theory of a lost grant.

The cases opposed to them are in our judgment founded upon much sounder legal reason, and we are disposed to follow the Pennsylvania and North Carolina cases, rather than those nearer home.

This disposes of the principal questions made in the case. The plaintiff claims there was error in the charge in another

respect; that if they found the right of way claimed by the defendants fully established by the evidence as to the length and character of the use, any subsequent application for, and obtaining license to use it from the plaintiff, would not divest them of the right. Such subsequent application for license would be very powerful evidence to show that the previous use was not under a claim of right, so as to give a title, but no claim is made but that as evidence, it was given all the force it was entitled to.

But the plaintiff claims that it should have the effect of an estoppel, and prevent the defendants from setting up the right of way they had obtained by the previous use. The claim is put put upon the same ground as that of a tenancy, where if a tenant has been admitted into possession by the landlord, he is estopped to deny his title. But we fail to see the analogy, or any good ground upon which an estoppel could be founded. The charge proceeded on the basis that the jury had already found the right of way completely established. The right of the defendants then was the same as if they actually held a conveyance of the right from the plaintiff. In such case it would seem singular that a parol admission of the plaintiff's right, or rather the defendants' want of right, should operate really as a reconveyance of a vested legal right in realty, which cannot be conveyed by parol. We think it can be regarded merely as an admission to be weighed against the defendants and as such the defendants had the full benefit of it.

The only remaining point, is the instructions as to the Penniman letter. The letter appears to have been introduced merely as an admission by Penniman of the title of the plaintiff, and his own want of title to any way over the the plaintiff's land, by his asking permission to cross. If the letter referred to the way in question, it would be important evidence against his right. If it had reference to another place, and not to this, there it was no admission at all against his right to use this way. If the jury found that the letter referred to the way in question, it does not appear that the plaintiff did not have all the advantage he was entitled to from it, and if they found it referred to another place, and not this, then it was entitled to no force at all as an

admission. It does not appear to us material how Mrs. Tracy understood the letter, considered in this light. If it was claimed that by her misunderstanding of the letter, and supposition that it referred to this way, she had conducted differently, and had allowed Penniman to use this way, supposing he was acting under the license obtained in answer to the letter, or omitted to put a stop to his use of it, supposing he acknowledged her right, or that of her son, then her misunderstanding of the letter might be important as explaining her own action. But nothing of this kind appears in the case. The letter was used to show that Penniman asked leave of Mrs. Tracy to use this way, thus acknowledging her right, and his own want of right. If he was speaking in the letter of another place, it was no acknowledgement at all as to this way, even if Mrs Tracy by mistake supposed it was. We find no error, and the judgment is affirmed.