SCHOOL DISTRICT NO. 8, OF THOMPSON, vs. JOHN LYNCH AND
ANOTHER.

The construction of a written document is a matter of law, where the meaning
is to be ascertained from the document itself; but, where the meaning can be
understood only from extrinsic facts, the construction is generally a question of
fact for the jury.

If the owner of real estate is ousted of possession, and the ouster is continued
uninterruptedly for a period of fifteen years by an ·open, visible and exclusive
possession in another, under a claim of right, such possession is presumed to be
held with the knowledge and acquiescence of the owner, and when proved is
sufficient to establish a title in the disseisor. The same presumption exists in
cases of prescriptive rights claimed by adverse user of similar duration and char-
acter.

A new trial will not be granted for error in the charge of the court upon a point
of law, where no injustice has been done by reason of such error.

The sufficiency of the evidence of title adduced by the prevailing party in an ac-
tion of trespass, tried to the jury, can be called in question in this court only
upon a motion for a new trial for a verdict against evidence.

TRESPASS *quare clausum fregit,* tried to the jury in the su-
perior court upon the general issue with notice of special
matter to be given in evidence, before *Carpenter, J.*

The plaintiffs claimed title to a part of the *locus in quó* by
a deed from Peleg Corbin, dated August 10th, 1805, in which
he conveyed to the inhabitants of the eighth-school district in
the town of Thompson forever, " a certain tract or piece of
land, situated and lying in Thompson in said district, for the
purpose of building a school-house, and for the use of school-
ing, or for any other public business that the said district

School District *v.* Lynch.

shall see fit, containing twenty-four rods. " The metes and bounds of the lot were given in the deed. To the remainder of the land in dispute, forming with the lot thus conveyed a plot of triangular shape, the plaintiffs claimed title by adverse possession, and also claimed that, if an absolute title had not been thus acquired, they had a prescriptive right to use the same as a school play ground and for certain other purposes.

The defendants denied both these claims, and claimed that the title to all the land in dispute, except the twenty-four square rods above mentioned, was in the Boston, Hartford and Erie Railroad Company, under authority from which corporation, it was conceded, they had committed the acts complained of. In proof of this they offered in evidence a deed from Peleg Corbin to Jesse Ormsbee, dated November 28th 1807, conveying the grantor's farm, " excepting a piece of land where the school-house now stands and a few rods of ground by said school-house, " and containing also in a subsequent part of the description of the farm the words, " excepting the school-house and the land to accommodate the same, so long as the district shall want it to keep a school in it and no longer. " Whatever title Jesse Ormsbee thus acquired in the land in question the defendants claimed to have proved to be vested in the railroad company, by a deed from his heirs.

It was admitted that the principal acts complained of were done to and upon that part of the *locus in quo* not included within the twenty-four rods deeded to the district, but that certain of the acts were committed to and upon the latter tract, by which the plaintiffs suffered damage to an amount not exceeding one hundred dollars.

The defendants claimed to have proved that the land, to which the plaintiffs claimed title by adverse possession or user, was so rough as to be unfit for cultivation, but that it had been used by the persons under whom the railroad company claimed title, during the whole time since 1805, by salting cattle thereon and carting and depositing wood and stone thereon. They also claimed, and requested the court to charge the jury, as matter of law, that Jesse Ormsbee, by his

deed from Peleg Corbin, obtained a title in fee to that part of the land in question outside of the twenty four square rods previously deeded to the district.

The court charged the jury that, in order to acquire an absolute title by possession, it was necessary that there should be an open, visible possession, under a claim of right, exclusive of the true owner, and continued uninterrupted for the full period of fifteen years or more; that, if there was a mixed or joint occupation by the plaintiffs and the true owner, the plaintiffs could not acquire such title; but that, if the plaintiffs had used and occupied the land in the manner and for the purposes claimed by them, and such use was under a claim of right, exclusive of the true owner, and continued uninterruptedly for the full period of fifteen years or more, then, although the true owner might have used the same premises during the same time for other purposes not inconsistent with the plaintiffs' use, the plaintiffs might acquire a right to such use, and maintain this action for an injury to such right.

The court also charged the jury that, in the construction of the deed to Jesse Ormsbee, it was to be taken more strongly against the grantor and in favor of the grantee; that if the language used could be satisfied by applying the same to the twenty-four square rods only, it was their duty to do so; that if by the reservation the grantor intended to reserve any portion of the triangle less than the whole, outside of the twenty-four square rods, such a reservation would be void for uncertainty; and instructed the jury to determine as a question of fact, under the instruction given, whether the reservation, when considered in view of the situation of the parties, and all the surrounding circumstances, applied only to the twenty-four square rods, or embraced the whole of the triangle.

The jury rendered a verdict in favor of the plaintiffs for $ 550, and the defendants moved for a new trial for error in the charge of the court and in the refusal to give the charge requested.

*Graves* in support of the motion, cited *Sargent* v. *Ballard*, 9 Pick., 251, and *Gloucester* v. *Beach*, 2 id., 60, note.

*Cleveland* and *Penrose,* contra, cited *Jennings* v. *Sherwood,* 8 Conn., 122; *Law* v. *Hempstead,* 10 id., 23; *Scovill* v. *Baldwin,* 27 id., 316; *Brown* v. *Slater,* 16 id., 192; *Lester* v. *The State,* 11 id., 415.

PARK, J. The defendants claim that the deed from Corbin to Ormsbee is free from ambiguity and hence that the court should have given a construction to the reservation it contains.

The language of the reservation is, " a piece of land where the school-house stands, and a few ·rods of ground by said school-house," and subsequently this language is used: " the school-house and the land to accommodate the same. " It became a material question on the trial in the court below, how much land was embraced by the reservation. The plaintiffs contended that it covered the whole of a triangular piece of land on which the school-house stood, and the defendants claimed that it extended only to twenty-four square rods of ground. It is easy to see that the deed itself throws no light upon the question. Its terms are indefinite. They are as consistent with the one claim as with the other. Who can say, as a matter of law, how much land is necessary to ac-. commodate a school, or how much is contained in a few rods of ground by the school-house ?

Indeed the claim of the defendants is based upon information outside of the deed. They infer that the grantor re-served twenty-four square rods only from the fact that that number of rods had been previously conveyed by Corbin to the plaintiffs; but the deed in question has no reference to the deed by which that conveyance was effected and consequently that deed cannot be considered as a part of this.

The construction of a written document is a matter of law, where the meaning is to be · ascertained from the document itself; but where the meaning can be understood only from extrinsic facts, the construction is generally a question of fact for the jury. *Jennings* .v. *Sherwood,* 8 Conn., 122; 1 Starkie's Evidence, 429.

The motion does not disclose the extrinsic facts and cir-

cumstances relied upon by the plaintiffs as tending to show that
the reservation extended to the whole of the triangular piece
of land. Its silence in this respect requires us to assume that
there were such facts, for the motion is the motion of the de-
fendants, and, if there were no such facts the defendants
should have shown it. They bring the case before this court,
claiming that there was error in the ruling of the court be-
low, and they should lay the foundation for such claim by
showing that the case required the court to comply with their
request.

The defendants further claim that the court erred in its
charge to the jury on the question of prescription. They in-
sist that the court should have gone further in its charge and
told the jury that the adverse use and possession must have
been with the knowledge and acquiescence of the owner.

It is true that, where an easement is acquired by prescrip-
tion, the adverse use is presumed to have been with the know-
ledge and acquiescence of the owner ; and the same is true
where the fee of property is acquired by adverse possession. To
give this knowledge and obtain this acquiescence the law re-
quires that the owners shall be ousted of possession : that the
ouster shall be continued uninterruptedly for a period of fif-
teen years ; that the possession shall be open, visible and ex-
clusive in another. The law designs that the owner shall have
ample knowledge on the subject, and a full opportunity to as-
sert his claim, but if he sleeps upon his rights for a period of
fifteen years he is presumed to have acquiesced in the claims
of another. It is scarcely possible that injustice can be done
in this respect, and indeed in the case under consideration
it was not pretended by the defendants that the owner of the
soil had no knowledge on the subject. He resided in the
neighborhood and during all the time occupied the land for
other purposes than those for which its use was claimed by
the plaintiffs. Under these circumstances there would be no
ground for a new trial, even if the defendants are correct in
their claims in regard to the law.

But there is no error in the charge of the court. Adverse
possession imports knowledge and acquiescence on the part of

the owner. It cannot exist under his license, permission or indulgence; and hence, where it exists, if the owner refrains from asserting his rights, he necessarily must acquiesce in the claims of another. *Sargent* v. *Ballard*, 9 Pick., 251; 2 Wms. Saund., 175 d., note 2; 3 Dane's Abr., 251, 252.

The defendants further claim that a reservation in a deed to one not a party to it is void. This is undoubtedly true, but the deed in question makes no reservation to the plaintiffs. They simply claim that, if the grantor reserved the land in controversy, then the defendants acquired no title to the same by deed.

The last claim of the defendants for a new trial raises no question of law for the determination of this court, but calls in question the sufficiency of the evidence to show a prescriptive right in the plaintiffs. But the motion of the defendants is not a motion for a new trial on the ground of a verdict against the evidence in the case, and therefore this claim of the defendants cannot be considered.

A new trial is not advised.

In this opinion the other judges concurred; except CARPENTER, J., who having tried the case in the court below did not sit.