SARAH T. ROLLINS *vs.* OWEN E. BLACKDEN.

Penobscot.   Opinion December 14, 1914.

*Adverse Use.   Burden.   Damages.   Easement.   Inchoate Easement.   Nominal Damages.   Prescription.   Trespass.   Water.*

1.  An easement to take water from a well of another is created by prescription only by an adverse use of the privilege with the knowledge of the person against whom it is claimed, or by a use so open, notorious, visible and uninterrupted that knowledge will be presumed and exercised under a claim of right, adverse to the owner and acquiesced in by him, for at least twenty years.
2.  If the adverse use of a privilege continues for twenty years without interruption or denial on the part of the owner having knowledge of it, it is conclusively presumed to have been with his acquiescence.
3.  The grant of an easement to take water from a well interrupts an inchoate easement claimed by another by prescription.   It disproves acquiescence.
4.  An inchoate easement to take water from a well is interrupted by an actual disturbance of and interference in, the exercise of the claimed right.
5.  In a suit to recover damages for taking water from a well, when it appears that the plaintiff is entitled only to so much water as is needed for the lot on which the well stands, the burden is on the plaintiff to show how much was needed.

On report.   Judgment for plaintiff for one dollar damages.

This is an action of trespass in which the plaintiff alleges that defendant at Dexter, in the County of Penobscot, on October 12, 1897, and on divers days and times between that day and the date of writ, September 4, 1904, with force and arms unlawfully broke and entered the plaintiff's close in Dexter Village, in said County, and dug ditches and canals through her said grounds and laid aqueducts and water pipes in said ditches, etc.

Plea, the general issue, with brief statement and counter brief statements by plaintiff.   At the conclusion of the evidence, by agreement of parties, the case was reported to the Law Court for decision, upon so much of the evidence as is competent and legally admissible.

The case is stated in the opinion.

*D. D. Stewart,* for plaintiff.

*F. D. Dearth, and Louis C. Stearns,* for defendant.

SITTING: SAVAGE, C. J., SPEAR, CORNISH, KING, BIRD, HANSON, JJ.

SAVAGE, C. J. Trespass quare clausum. The case comes before the Law Court on report.

The most important controversy between the parties relates to the right of the defendant to draw water from a well on the land of the plaintiff. One phase of this controversy was considered by this Court in *Rollins* v. *Blackden,* 99 Maine, 21.

We gather from the evidence the following statement of facts. The plaintiff is the owner of two adjoining lots of land lying on the south side of Main Street, in Dexter. Her fee in each lot extends to the center of the street. Both lots formerly belonged to one Bryant. Bryant conveyed the westerly lot, on which plaintiff's buildings stand, to the plaintiff's mother, from whom she took title several years prior to 1882. It was said in argument to have been in 1872. The easterly lot was conveyed by Bryant to the plaintiff in 1882. In 1871, one Flynt dug a well twelve feet deep on the front end of the easterly lot, within the limits of the street, and about one rod easterly from the dividing line of the lots. He dug a trench in the street, westerly across the westerly lot and so on to the hotel now owned by the defendant, but which was then owned or leased by one Hayes. He laid a one inch pipe from the well to the hotel, and from that time on until 1897, when he sold his right, such as it was, to the defendant, he continued to draw water from the well and sell it to the owners or occupants of the hotel. It appears that the pipe entered the well about six feet below the surface of the ground and was bent down in the water, which was thus siphoned out. In 1881 Bryant, who then owned the easterly lot, but not the westerly one, conveyed to one L. D. Hayes who then owned or occupied the hotel "the right to draw water by an aqueduct from the well" . . . for the accommodation of the hotel, and for any other purpose, "with the right to convey the same on the southerly side of said road, but within the limits of the road, so far as my land extends westerly," which was about one rod, "and with the right of ingress and egress for the purpose of repairing said well or aqueduct." The deed contained

the following reservation:—''Whenever the lot on which said well is situated shall become the property of any other party than myself, then all rights hereby conveyed shall cease to this extent, viz: whoever may occupy said lot shall have the preference of the water of said well for all purposes whatsoever useful for the accommodation of said lot, or of any buildings that may be placed thereon, and said grantee, his heirs and assigns, shall have only the right to said water so far as not needed for said lot and buildings." This conveyance created an easement by grant. It does not clearly appear just what exercise Hayes ever made of the privilege granted by this deed. It gave him no right to convey the water across the westerly lot then owned by the plaintiff. The water continued to run as before in the Flynt pipe from the well to the hotel. There is some evidence from which it may be inferred that Flynt and Hayes made some arrangement for the use of the water. Hayes had an easement, exclusive so far as Flynt was concerned, in the right to draw water and convey it by pipe as far as to the plaintiff's westerly lot, but no farther. Flynt had put in a pipe system across the westerly lot and to Hayes' hotel. Neither ownership alone was of any value. But it appears that afterwards Hayes paid Flynt $45 annually for the water service.

The deed of Bryant to Hayes of the right to draw water was not recorded until after the 1882 deed of the easterly lot on which the well was situated, by Bryant to the plaintiff. But as was held in the former case, *Rollins* v. *Blackden*, 99 Maine, 21, the plaintiff took her title in 1882 with notice of the grant of water rights to Hayes. This appears by the following modified covenant of Bryant in her deed, viz: that the premises ''are free from all incumbrances, except surplus water from well beside road conveyed to L. D. Hayes, and the right to maintain his aqueduct."

The case shows that in 1882, after the plaintiff purchased the lot on which the well is situated, while Flynt was fixing the well, or digging about it, the plaintiff went to the well, told him that it was hers, and objected to his meddling with it, or digging around it, or on her terraces. Flynt told her that by authority of the town he had the right to go into the well, and that he owned it and the water pipe. He made no claim of right except that the town had given him authority.

Later, but about the same time, when Flynt was working on her land near the well, trying to find a leak in the pipe, the plaintiff told

him that he had no right there, and forbade his going on the land or digging any further. She showed him a copy of the deed from Bryant to Hayes, of the water rights. He replied in substance that the well was in the road, that she had no control in the road, and could not help herself, and that the town had given him the right. He kept on working.

Several years later, prior to 1888, Flynt, who owned the land on the northerly side of Main Street, began digging a trench across the street from his lot to the well, for the purpose, as he said, of running across to his own house to get the benefit of it for himself. The plaintiff told him. "You cannot do it. I will not have it." He replied that he had permission from the selectmen and should do it. She immediately consulted Mr. Crosby, an attorney, who went with her to the premises. He said to Flynt:—"Flynt, you stop. You know you haven't any right to take the water and if you don't stop I will take you into Court." He also gave Flynt written notice that he had no right to dig the trench upon the plaintiff's land, and draw the water from her well, forbidding him in behalf of the plaintiff from doing so. Flynt then stopped. The ditch itself had not reached the center of the road, which was the plaintiff's line, but Flynt had torn up the sidewalk on the plaintiff's side of the street, and put it over onto the plaintiff's terrace, and had dug along the edge of the terrace towards the well. Flynt replaced the sidewalk and went away.

In 1897, Mr. Flynt conveyed to the defendant "my well at south side of Main Street, abreast of Miss Sarah Rollins land, also my well situated in my garden in Flynt Place, north of upper Main Street, the right to go to and from for purpose of repairs, and all the pipe running from the above wells to said Blackden's cellar." On November 5, 1900, the son and sole heir of L. D. Hayes conveyed to the defendant all the water rights that his father had had under the 1881 deed.

Immediately after the defendant purchased the wells of Flynt in 1897, he reconstructed the system. He dug a trench in a practically straight line from the hotel to the well. The trench was all within the road limits, but it crossed the plaintiff's westerly lot, and extended a rod on the easterly one to the well. At the same time the defendant laid a two inch pipe, which entered the well about one inch from the bottom. The new pipe did not follow the line of the old one, except as in one or two places the new trench crossed the old. The

trench was dug deeper and wider than the old one, and the pipe naturally conveyed more water than the old one. At the same time the defendant dug a trench and laid a pipe from the Elder well, so called, on the Flynt lot, southerly across Main Street, and thence westerly within the road limits, and across the plaintiff's easterly lot to the Rollins well, so that the water from the Elder well, instead of being conveyed directly to the Flynt pipe, as formerly, was caused to run first into the Rollins well, from which it was conveyed with the other water to the defendant's hotel. And these are the acts of alleged trespass of which the plaintiff complains in her declaration. She sets forth the digging of the soil, the opening of the trenches, the laying of pipes; also the taking of water from the time of the trespass until the date of her writ, which was September 19, 1904.

One other feature of this litigation must be mentioned. On December 5, 1900, the plaintiff sued out a writ of entry against the defendant, for the recovery of both lots of land. No mention of easements was made in the declaration. But she demanded damages "for rents and profits received by said Blackden therefrom, and for the trespass and injuries committed by him thereon." The defendant, without filing the general issue, undertook to disclaim specially, except as to the well and aqueduct. His plea was held to be faulty, was ordered stricken off, and general judgment was ordered for the plaintiff. Exceptions were taken to the order, which were subsequently overruled by the Law Court, with an order that the damages be assessed at nisi prius. At the hearing in damages, the defendant offered evidence in reduction of damages, of a prescriptive right to draw water from the Rollins well, and to take it across the plaintiff's premises towards his hotel. The plaintiff objected to the evidence on the ground that the defendant was concluded by the pleadings and judgments already entered. Thereupon the question of damages, and the admissibility and effect of the evidence respecting damages were reported to the Law Court. The Law Court, finding that the plaintiff had not shown herself damaged, or to put it another way, that she had not shown that the defendant had received, or become accountable for, any rents and profits which belonged to her, had no occasion to consider any other question, and directed that the plaintiff have judgment for the demanded premises, but without damages for the rents and profits.

In the former opinion, if we may judge from expressions in the brief of the eminent and learned counsel for the plaintiff, the Court failed to make clear the grounds of exclusion of damages, especially with respect to the trespasses. It is pertinent to this discussion to do so now. The action was a real action. In her writ the plaintiff claimed damages in the way of rents and profits and for certain unspecified trespasses. The real bone of contention was the use of the water. In a real action, the plaintiff may recover for rents and profits, which are defined to be the clear annual rental value of the premises while the defendant is in possession, and for any destruction or waste. These are the limitations of the statute. R. S., Chap. 106, Secs. 11 and 12. A plaintiff cannot recover for trespasses not amounting to destruction or waste. The rule of the common law is modified by the statute. *Larrabee* v. *Lumbert,* 36 Maine, 443. The trespasses complained of did not amount to destruction or waste. Besides, damages for destruction and waste were not declared for.

The defendant has pleaded the general issue, and by way of brief statement, the statute of limitations, a prescriptive right to draw the water from the well by means of the ditches and pipes mentioned, a right by grant to do the same, and that the plaintiff is barred by the former judgment from recovering damages for the water taken.

The plaintiff takes issue with these claims. And particularly with reference to the claimed prescriptive right, she contends that if Flynt ever had an inchoate prescriptive easement it was interrupted by the deed from Bryant to Hayes of the water privilege in 1881, by the plaintiff's denial of right and forbidding the use of water by Flynt in 1882, and lastly by what took place when Mr. Crosby was present and gave notice, oral and written, to Flynt to proceed no further.

First, we will inquire whether the defendant has an easement by prescription. On this question the burden of proof is on the defendant. *Sargent* v. *Ballard,* 9 Pick., 256. If the proof be left doubtful, he fails. 2 Greenl. Ev., Sec. 539.

An easement to take water from another's spring or well is an incorporeal hereditament. It may be created by grant or by prescription. It is created by prescription only by an adverse use of the privilege with the knowledge of the person against whom it is claimed, or by a use so open, notorious, visible and uninterrupted that knowledge will be presumed, and exercised under a claim of

right adverse to the owner and acquiesced in by him . . . for a period equal at least to that prescribed by the statute for acquiring title to land by adverse possession. *Stillwell* v. *Foster,* 80 Maine, 333; *Sargent* v. *Ballard,* 9 Pick., 251; *Arnold* v. *Stevens,* 24 Pick., 112; *Powell* v. *Bagg,* 8 Gray, 441; *Smith* v. *Miller,* 11 Gray, 145; *Blake* v. *Everett,* All., 248; *School Dist.* v. *Lynch,* 33 Conn., 330; *Lehigh Valley R. R. Co.* v. *McFarlan,* 30 N. J., Eq. 180; *Workman* v. *Curran,* 89 Pa., At. 226; *Nichols* v. *Ayler,* 7 Leigh., 546; *Bealey* v. *Shaw,* 6 East., 216; *Livett* v. *Wilson,* 3 Bing., 115; 2 Greenl. on Ev., Sec. 539; Washburn on Easements, (3rd Ed.) page 160; Jones on Easements, Sec. 164; 14 Cyc., 1147. Each of the elements essential to the creation of a prescriptive easement is open to contradiction and liable to be disproved. *Smith* v. *Miller,* supra. But the existence of all the elements for the requisite period creates a right resting upon a presumption, juris et de jure, conclusive against attack.

The actual point of attack in this case is the acquiescence of the owner, Bryant at first and the plaintiff afterwards, for a continuous period of twenty years. Proof of acquiescence by the owner is essential. So, in effect, say all the authorities above cited. Where the adverse use has continued for twenty years without interruption or denial on the part of the owner, and with his knowledge, it is conclusively presumed to have been with his acquiescence. *School Dist.* v. *Lynch,* supra; *Perrin* v. *Garfield,* 37 Vt., 304. In the matter of acquiescence, the creation of a prescriptive easement logically differs from the acquisition of a title to real estate by adverse possession. In the former the possession continues in the owner of the servient estate, and the prescriptive right arises out of adverse use. In the latter, the owner is ousted from possession, and the right or title arises out of adverse possession; and nothing short of making entry, or legal action, will break the continuity of possession. *Powell* v. *Bagg,* supra; *Workman* v. *Curran,* supra; Washburn on Easements, page 163.

The plaintiff contends the original use now claimed to have been prescriptive was by license. If so, it is conceded that there was no prescription until the use became adverse. The authorities all agree on this point. Jones on Easements, Secs. 179, 799. The fact that Flynt claimed his right through the permission of the town or selectmen, and not from the owner of the servient estate, furnishes ground for the inference that the digging and subsequent use were

adverse to the owner.    At the best, there is very little in the case to indicate whether the use was originally permissive, or was adverse. But if we assume that it was adverse and prescriptive, we next meet the contention that the easement was interrupted.

While the authorities agree that acquiescence is essential, they are not agreed as to what kind of degree of non-acquiescence will work an interruption.    On one side the leading case is *Powell* v. *Bagg*, 8 Gray, 441, in which the Court held that if before the lapse of twenty years "the owner of the land, by a verbal act upon the premises in which the easement is claimed, resists its exercise, and denies its existence, his acquiescence is disproved, and the essential elements of a title by adverse use are shown not to exist."    The Court said explicitly that it was not necessary to use actual force to dispossess the intruder.

The doctrine of *Powell* v. *Bagg* was approved and applied in *Lehigh Valley R. R. Co.* v. *McFarlan*, 30 N. J., Eq. 180; *Workman* v. *Curran*, 89 Pa. St., 226; *C. & N. W. Ry. Co.* v. *Hoag*, 90 Ill., 339; *Nichols* v. *Ayler*, 7 Leigh, 546; *Field* v. *Brown*, 24 Gratt., 74.    See also *Bealey* v. *Shaw*, supra; *Stillman* v. *White Rock Mfg. Co.*, 23 Fed. Cas., 549; Washburn on Easements, page 162; 14 Cyc., 1147.

On the other hand, the Supreme Court of New Jersey in *Lehigh Valley R. R. Co.* v. *McFarlan*, 43 N. J., Law 605, virtually overruling the Vice Chancellor in the case between the same parties in 30 N. J., Eq. 180, held that mere denials of the right, complaints, remonstrances or prohibitions of user, unaccompanied by any act which in law would amount to a disturbance, and be actionable as such, will not prevent the acquisition of a right by prescription. The Court following by analogy the doctrine of adverse possession, based the doctrine on public policy, and said:—"Protests and mere denials of right are evidence that the right is in dispute, as distinguished from a contested right.    If such protests and denials, unaccompanied by an act which in law amounts to a disturbance and is actionable as such, be permitted to put the right in abeyance, prescriptive rights will be placed upon the most unstable of foundations. . . . .    If they be not accompanied by acts amounting to a disturbance in a legal sense, they are no interruptions or obstructions of the enjoyment."

The same doctrine is stated in *School Dist.* v. *Lynch*, 33 Conn., 330; *Okeson* v. *Patterson*, 39 Pa. St., 22; *Tracy* v. *Atherton*, 36 Vt., 503; *Kimball* v. *Ladd*, 42 Vt., 747.    The authority of *Okeson* v.

*Patterson* is shaken by the later case of *Workman* v. *Curran*, supra, in the same Court. In both Vermont cases, *Powell* v. *Bagg* is discussed, and sought to be distinguished. In *Tracy* v. *Atherton*, the Court said of *Powell* v. *Bagg*:—"The owner of the land being already in possession could not make an entry to stop the effect of the user, or possession, and his act on the land of forbidding the other to enter and use the aqueduct was all that he could do to prevent him unless he resorted to force, and oridinarily the law does not require one to use force to assert his rights." "That decision (in *Powell* v. *Bagg*) was founded apparently on a sound distinction between an actual adverse possession of lands, and a mere easement upon lands, of which the owner himself is in actual possession."

While we shall not need to inquire whether mere denials of the right, and protestations against its exercise are an interruption of an inchoate easement, the discussions to which we have adverted are illuminating on the question why acquiescence is an essential element of a prescriptive easement.

In this case we must hold that the grant of the easement to take water made by Bryant, the owner of the land, to Hayes, in 1881, was an effectual interruption of Flynt's inchoate easement. As the authorities cited by the defendant show a deed by an owner does not interrupt the continuity of an adverse possession. But it seems to us that it is an act of the strongest potency to rebut the presumption of acquiescence in an adverse use. If the word "acquiescence" has any signification, it would seem that a conveyance of the thing itself, while it would not interrupt an adverse possession, would interrupt an inchoate easement, one feature of which must be acquiescence.

And if this were not enough, we think there was an interruption later when the attorney gave Flynt oral and written notice not to proceed further in digging to the well and drawing water therefrom, and Flynt heeded the notice and left. It is true the new ditch had not quite reached the plaintiff's premises. But the purpose was evident. And Flynt had then gone upon the plaintiff's land and digged and removed the sidewalk to effectuate his purpose of getting to the well. Here was an actual disturbance and interference, for which Flynt would have had a remedy if the plaintiff had been in the wrong. It seems to measure up to the rule of the cases which hold that mere denials and protestations are not enough, and that actual disturbance is necessary. And there has been no twenty year period of uninterrupted use since.

The defense of prescriptive easement then fails.   The defendant had no right or title to the water and pipe, until the Hayes deed to him of November 5, 1900, and then only to so much water as was not needed for the plaintiff's easterly lot, with a right to maintain the pipe to the easterly line of the westerly lot, but no further.   The acts of the defendant in 1897, in changing the system, putting in larger pipe, and bringing the water from the Elder well to the Rollins well were all trespasses, and running the water since from the well through the pipe upon the plaintiff's land has been a continuing trespass.

But the remedy for all acts in 1897 is barred by the statute of limitations.   This action was not commenced until September 19, 1904.   All claims for damages prior to September 19, 1898, are thus barred.   The only damages now open for consideration are those of the continuing trespass since that date, that is, the maintenance of the pipes on her land, the bringing of water across her land from the Elder well, and taking water from the Rollins well through the pipe so far as it extended on her land.   But in her real action commenced December 5, 1900, the plaintiff claimed, as rents and profits, the rental value of the water taken by the defendant up to that time.   And that issue was tried out and determined adversely to the plaintiff, for want of proof, as stated in the opinion in that case, *Rollins* v. *Blackden*, 99 Maine, 21.   The damages therefore, for water taken prior to December 5, 1900, have been litigated and settled.   But the plaintiff may recover so much damages as she has proved for taking water and maintenance of pipes between December 5, 1900, and the commencement of this action.   And the extent of damages to be recovered must be measured and limited by the plaintiff's right, and not by the defndant's want of right.   She may recover the rental value of the water which the defendant has taken as belonged to her, and for no more.

The plaintiff claims that she was entitled to all the water in the well, and hence that she may recover for all that the defendant took. We do not think so.   The question presented is the same question that was presented and decided in the former case, 99 Maine, 21. In that case we held that the grant to Hayes in 1881 of the right to draw water from the well was determinable as to so much of the water as might be needed for the easterly lot whenever that lot should become the property of another than the grantor, but that

until then, and afterwards until the water should be needed for the lot, and always as to so much of the water as should not be needed, the grant was absolute. It was also held that the plaintiff took her title to the easterly lot in 1882, with notice of the prior grant of the water right to Hayes, and that she did not acquire an absolute right from the well, but only, to use the language of the deed, "to have the preference of the water of said well for all purposes whatsoever for the accommodation of said lot, or of any buildings that may be placed thereon," and that she had a priority or first right to so much water as was useful and needed for the lot and buildings, but only to so much. We think the opinion in 99 Maine, 21, states accurately the right and the limitations of the right of the plaintiff. And it follows that if the defendant has deprived her of the exercise of her preference or priority, and has taken water from the well which was needed and would otherwise have been used for the benefit and accommodation of the easterly lot, he is so far liable. And here it may be noted again that after November 5, 1900, the defendant, under his deed from the heir of Hayes, owned the right to draw from the well all the surplus water, that is, all not needed for the easterly lot of the plaintiff. He had the right to conduct it across that lot, but not across the westerly lot.

The burden is on the plaintiff to show the amount of her damages, and again, as in 99 Maine, 21, we are troubled by the lack or indefiniteness of proof. There are no buildings on the easterly lot. The testimony discloses no need of water from the well, except for the use of a garden on that lot. Of the size of the garden, and of any special needs for water, there is no hint. And yet it is common knowledge that a garden needs some water. It does not appear that there was not at all times water enough in the well for the needs of the garden, which she could have drawn. The defendant's pipe . enters the bottom of the well, but that does not necessarily mean that he has kept the well drawn down. In a water system supplying buildings through pipes that must necessarily end in faucets, there can be no presumption that the water is kept down to the level of the pipe as it enters the well or reservoir. She says that she would be glad to have the water for the garden, and would have used it if she could have had it. She says further that for two summers she did use water from the well, and one summer it was nailed up. But it does not appear whether these summers, or any of them, were

before December 5, 1900, or afterwards. It is true in any event, that she has never put a pipe into the well, nor a pump, nor meddled with it in any way. On October 30, 1900, and again in August 11, 1904, the plaintiff gave the defendant written notice to remove the pipes from the well, and from her land, stating therein that she needed and claimed all the water that naturally came into the well. In the latter notice, given about a month before this suit was commenced, she said she needed the water for the garden and the crops thereon, "and for the use and benefit of much larger crops and garden that could and would be cultivated but for the want of water of said well." But a notice is not proof. Notice of need is not proof of need. The notices in evidence express the wishes of the plaintiff, and her claims, too, but they do not prove the needs of her garden. Her right to water exists only when there is a present need for it. If her garden needs water she can take all it needs. If she wishes a larger garden, she can make one, and then take all the water which that needs. If she builds a house on the easterly lot, when water is needed for it she can take it from the well. But at all times she is limited by existing needs of the lot and building. The surplus belongs to the defendant.

Past needs are a matter of proof. As already stated, the garden has presumably needed some water. And it may be that the defendant's denial of her right was a sufficient excuse for her not taking it. But the question still remains, how much damage? We do not think the plaintiff has given us data sufficiently definite to make it proper, or even possible, for us to determine how much. The annual rental for water for the garden cannot be large. If assessment of actual damages were undertaken, the assessment should not go beyond the maximum damage proved, and we have nothing by which we can fix that limit. The plaintiff therefore must be content with nominal damages. The damages occasioned by continuing the pipes in the plaintiff's land are also nominal.

The certificate must be,

*Judgment for plaintiff for one dollar damages.*