GEORGE MONTGOMERY *v.* TIMOTHY MAYNARD AND SAREPTA MAYNARD.

*Practice. Amendment. Jury.*

In assumpsit against husband and wife for the debt of the latter accrued before marriage, it is within the power of the county court to allow on trial an amendment of the declaration, so as to allege that the debt accrued before coverture; and the exercise of this power is solely a matter of discretion, and cannot be revised by the supreme court.

When it is apparent that the jury have rendered a different verdict from what they intended, the court may allow the jury to correct it in open court, or may themselves correct it with the assent of the jury; or they may send the jury out of court to correct it, and then assent to it in court; notwithstanding the jury may, have separated ¿immediately after rendering the first verdict.

ASSUMPSIT ON THE COMMON COUNTS. The defendants pleaded the general issue and a plea in offset. The plaintiff also pleaded in offset to the offset of the defendants. The plaintiff and defendants both filed specifications.

The cause was tried by jury, at the December Term, 1859, in Lamoille county—ALDIS, J., presiding.

The plaintiff's claim was, 1st, for his work and labor in building a barn, finishing a house, and making other improvements upon the premises belonging to the defendant Sarepta ; 2d, for moneys paid out in buying materials to build the barn and finish the house ; 3d, for board of the defendant Sarepta, between March, 1855, and March, 1857 ; and 4th, for muck and lime.

The defendant Sarepta was the mother of the plaintiff's wife. In 1855, in February or March, she bought a house and lot of three acres, in Morristown, and made a verbal agreement with the plaintiff in regard to the same.

· The testimony of the plaintiff tended to show that Sarepta and the plaintiff agreed, in February or March, 1855, that the plaintiff should move on to the premises belonging to the said Sarepta, and live there ten years, (if they could agree ;) that he should build a barn and finish the house, and make the other improvements, which he did make, and charge nothing for his own work ; that she should furnish him with money to buy or pay for what-

ever materials or work would require money to be paid out for them, and that if the plaintiff and Sarepta did not agree, or she wished to sell the place, so he had to leave before the end of the ten years, she should pay him what was right for his work.

The plaintiff's testimony tended to show that all the items of his account accrued under this agreement between March, 1855, and March 1857, and while Sarepta was sole and unmarried, and were just charges against her ; that the plaintiff and Sarepta could not agree, and that the plaintiff, after occupying the premises from March, 1855, to March, 1857, left them for good cause ; and that the defendants and Sarepta, while sole, had refused, though requested to pay the account.

After the plaintiff closed his case, the defendants introduced testimony tending to show that Sarepta made no such agreement with the plaintiff as he claimed, but that the items charged were either, *first*, mere gifts and gratuities, and never properly chargeable to Sarepta, (such as the board which defendants claimed was furnished at different times when she was on a visit to her daughter, the wife of the plaintiff,) or *secondly*, were furnished by the plaintiff for his own convenience and comfort while occupying the premises the two years, and were agreed not to be charged to the defendant Sarepta, in consideration of her not charging the plaintiff for rent.

It was admitted that Sarepta was sole and unmarried, while the items claimed by the plaintiff accrued, and that she was married to the defendant T. Maynard, in September, 1857.

The plaintiff made no claim for anything accruing after March, 1857, and offered no evidence to show or prove any claim accruing later than March, 1857, nor any claim except those so accruing against Sarepta while sole.

No objection was made by the defendants to the admission of the plaintiff's evidence, nor upon the ground that the declaration did not allege that the cause of action arose, and the articles were furnished, while Sarepta was unmarried.

At this point in the trial, and before the defendants' testimony was closed, the plaintiff moved the court for leave to amend his declaration by inserting therein, and so amending it as to have it appear, that the defendant Sarepta was indebted to the plain-

tiff for the work, materials, money paid, &c., *whilst she was sole and unmarried, and while so sole, promised to pay*, &c., and by adding new counts for the same cause of action, with the like averment. To this the defendants objected.

As the trial had proceeded thus far upon the ground, on the part of the plaintiff, of such a claim as the proposed amendment would cover and no other, and as the defence had been wholly confined to the denial and disproving of such claim, and no other ground of defence had been urged, or was claimed by the defendants, the court allowed the plaintiff to amend his declaration as requested, and to file the new counts; the defendants being also allowed to amend their pleadings so as to avail themselves of every matter which they had offered to prove by way of defence.

To this decision the defendants excepted.

The trial then proceeded.

The court charged the jury that as there were pleas in offset, they must find what sum was in arrear from either party to the other, and render a verdict accordingly, and that if nothing was in arrear from either party to the other, the defendants would be entitled to a verdict for their costs, and directed the verdict to be drawn up by the clerk according to the charge.

The jury came in with a verdict that the plaintiff was in arrear to the defendants in the sum of thirteen dollars and sixty cents, and that the defendants recover that sum of the plaintiff, with costs, and the verdict was recorded.

In about five minutes after the verdict was rendered, the counsel for the plaintiff informed the court that the jury, by mistake, had rendered a verdict for the defendants to recover of the plaintiff thirteen dollars and sixty cents, when in fact they intended to render a verdict for the plaintiff to recover of the defendants the sum of thirteen dollars and sixty cents, and that they were then assembled in the jury room. The court directed their officer to call them into court. They came into court. The court first inquired of them whether they had separated since the return of their verdict, and whether they had had conversation with any one in regard to the same, and ascertained that, after rendering their verdict, eleven of them returned imme-

HARVARD LAW SCHOOL LIBRARY

Montgomery *v.* Maynard et al.

diately to their jury room, and had had no conversation with any one except of their own number, and that the twelfth juryman had gone to the tavern, and being asked by the tavern keeper, how the verdict was? had replied that it was for the plaintiff, for thirteen dollars and sixty cents, and had had no other conversation with any one. The court then stated to the jury that they had been informed that there was an error or mistake made by them in their verdict, and that they had intended a verdict for the plaintiff instead of the defendants, and inquired of them if there was any mistake. The foreman replied that there was a mistake in the verdict; that it was his own fault in filling up the blank given to the jury by the clerk; that he had, by mistake, filled out and signed the one for the defendants, when the jury had all agreed on one for the plaintiff; that when it was read to them in court, he thought it didn't sound right; that they all returned to their jury room, and there discovered their mistake; that they had not separated, nor spoken to any one, except as above stated, until the court had sent for them to come into court. The court thereupon directed the jury to take back their verdict, and retire and consult as to the same, and bring in such a verdict as they really intended to render, and as they thought just and right. The jury retired, and soon after came in, and rendered a verdict that the defendants were in arrear to the plaintiff in the sum of thirteen dollars and sixty cents, and that the plaintiff recover the same of the defendants, with costs.

The defendants objected to the court allowing the jury to alter or amend their verdict, and excepted to the decision of the court in regard thereto.

The defendants also moved in arrest of judgment for the plaintiff, upon the ground that the verdict of the jury was not for the plaintiff, but was for the defendants, and moved for judgment for the defendants. But the court, upon the facts as above stated, overruled the motion in arrest, and rendered judgment for the plaintiff.

The defendants also moved in arrest for the insufficiency of the declaration. This motion was also overruled, to which the defendants excepted.

*Child & Benton,* for the defendants.

—————— ————— for the plaintiff.

POLAND, J.    I. The defendants' first exception is to the allowance of the amendment of the plaintiff's declaration.

The original declaration, in the ordinary form of general assumpsit, was clearly inappropriate, and insufficient to enable the plaintiff to recover under it, for a claim which accrued against the wife before marriage.

But notwithstanding this, the defendants made no objection to the plaintiff's evidence, and the same was all introduced, and the defendants proceeded with their evidence in defence of the plaintiff's claim, upon the merits.

After the evidence was closed upon both sides, the plaintiff moved to amend his declaration so as to make it conform to the claim which his evidence tended to establish; and the court allowed him to do so, against the defendants' objection.

The amendment was one coming clearly within the power of the court to grant, by the rule laid down in *Carpenter* v. *Gookin,* 2 Vt. 495, and numerous cases following that in our reports. The amendment being of the class which the court had power to allow, the exercise of the power must rest entirely in the discretion of the court, and cannot be revised on exceptions; and if we were satisfied that the defendants were not allowed a reasonable opportunity to answer it by new pleadings or new evidence, we could scarcely say there was error in law.   But there appears to be no ground for complaint in this respect.

The defendants did not claim that they had any other defence to the plaintiff's claim, or evidence in support of that defence, except what they had already shown; they asked no further delay to meet the plaintiff's amended declaration by new pleadings or evidence, and did not choose to avail themselves of the leave given to amend their own pleadings.

Under these circumstances, we do not see the slightest ground of complaint on the part of the defendants to the action of the county court.   The defendants could not well complain of sur-

prise at the plaintiff's evidence under his first declaration, for they allowed it to come in without objection. It would seem that the defendants were lying by with a view of some ultimate advantage from the defect in the plaintiff's declaration if the result of the trial on the merits should be unfavorable, and the action of the court in depriving them of the opportunity of upsetting the verdict after going to trial on the merits, was eminently just.

The objection that the amended count was not filed until a subsequent day in the term, and after the verdict, we do not find sustained in fact. From the record we think it clearly appears that it was filed on the trial, that is, it was put into the case, and if the clerk did not in fact put on a certificate of its being filed until some days after, it is of no importance.

II. The next question is in relation to the propriety of the amendment of the verdict.

It seems that by a mistake of the foreman of the jury, the verdict when returned, appeared to be a verdict in favor of the defendants instead of the plaintiff, and the error was not discovered until the jury separated; but they appear to have been sensible that something was wrong about the verdict, and all the jurors except one returned immediately to the jury room, but the one went to the hotel.

It is not now questioned but that the court, upon proper evidence, might have corrected this error in the verdict, without again sending the jury out, or using them at all, except to inquire of them how they intended the verdict. But upon its being suggested to the court that this error existed in the verdict, the court called the jury to be again brought together, and stated to them what was claimed as to the error in the verdict, and directed them to go out and correct the verdict, if not already as they intended it. The jury went out and corrected the verdict, and returned it to the court.

The defendants treat this as if the case had again been committed to the jury to re-examine the evidence, and form another judgment upon it, and that, as they had separated, and one of them had held conversation about the case with a third person, the new verdict ought to be set aside. If this was the true view of the transaction, we should incline to the same view.

But it does not appear to us that the jury were sent out again, with a view to any other action than to see if they had made a clerical error in their verdict, and if so, to correct it.

The court would clearly have been justified in allowing the jury to correct the verdict in open court, or in themselves correcting it, by having the assent of the jury, and how the substance of the matter is changed by sending the jury out of court to make the correction, and then assent to it in court, is not very apparent.

The court having power to amend the verdict, the particular mode of doing it rested in their discretion, and forms no ground of error, at least when there appears no ground to suspect any unfairness or injury by the course pursued.

III. As to the motion in arrest.

The first ground of the motion is, that as the original declaration was not struck out, but still continued to form one count, and a defective one, and the verdict was general, the verdict should be set aside. But the whole record clearly shows that the verdict was in no part founded upon the defective count.

The new count was added because all the plaintiff's claim was of a character that could not be recovered under the first declaration, and this negates all inference that some part of the recovery was founded on the bad count. This, therefore, was no ground to arrest the judgment. *Whitcomb* v. *Walcott,* 21 Vt; *Camp* v. *Barker.*

The other ground of arrest is, that the plaintiff's application in offset to defendants' plea in offset, was defective, and that the plaintiff had no leave to amend it.

The answer to this objection is quite the same in principle as to the other ground.

It appears by the whole record, that no evidence was offered to sustain any claim under this replication, and therefore the verdict could not have been founded upon it, even in part, and, therefore, is no ground of arrest, even if defective.

This disposes of all the defendants' exceptions, and the judgment is affirmed.