PHINEAS KIMBALL *v.* SAMUEL M. LADD.

*Easement. Adverse Possession. Evidence. Declaration. Variance. Amendment.*

Where a party enjoys the use of an easement in a manner otherwise sufficient to gain a right by adverse use, he will not be prevented from acquiring the right, even if the other party owning the servient estate verbally objects, or denies the right occasionally during such user, if he does not in any way interfere with or interrupt that enjoyment, having the power to do so, and the easement being of such character that the owner of the dominant estate had only to enjoy the use without other adversary acts on his part.

In a suit between two mill-owners on the same stream, one above the other, in which the lower mill-owner claimed that his grantors had gained the right to draw water from a dam at the upper mill, by fifteen years adverse use under a claim of right growing out of a parol arrangement between the grantors of the respective parties by which the then lower mill-owner was to pay the expense of the flowage of lands in consequence of building said dam, and in consideration was to have the right of drawing water therefrom, the court instructed the jury that if the former owners of the lower mill, under claim of right under that contract, had exercised the right in the manner necessary to gain a right by adverse use, they would not be prevented from acquiring the right, even if the owner of the upper mill did occasionally, while the owners of the lower mill were thus enjoying the right, object or deny the right, if he did not in any way interfere with or interrupt that enjoyment, and they enjoyed it in *spite* of such objection, as fully as if there had been no such objection or denial. *Held* that in this there was no error.

*Held* that it was competent to prove that the former lower mill-owner, who was a party to said arrangement, and while he was using the water from said dam, told the witness about the arrangement and what it was, as tending to prove he claimed a right to so draw the water, but not as evidence that such arrangement was made or that anything was done under it.

The heirs of a former owner of the upper mill and privilege having sold the same to the defendant in 1855, and having excepted and reserved, in their deed of the same, "the right to draw water from said privilege for the use of the grist-mill now owned by" etc., referring to said lower mill as it then was, it was *held* that said deed did not create any right in the lower mill-owners to take water from said dam, but that it was evidence tending to show that when the defendant took that deed, such a right had been acquired and then existed so far as the grist-mill was concerned, but was not conclusive of the fact.

The plaintiff having set forth in his declaration a right in himself to have the water flow as it had been accustomed, for the purpose of supplying his grist-mill, saw-

mill and lath-mill, and that the defendant had obstructed such flow to the injury of the plaintiff, and the jury having found by special verdict that the right existed only as to the grist-mill, it was *held* proper for the court to allow the plaintiff to amend his declaration, after verdict and before judgment, so as to limit the right and claim to water for the use of the grist-mill, though there were a variance between the original declaration and the special verdict.

TRESPASS ON THE CASE. Plea, the general issue. Trial by jury, June term, 1869, PECK, J., presiding.

It appeared in evidence that at and before the commencement of this suit the plaintiff owned and was in possession of a grist-mill, saw-mill and lath-mill, situated in Post Mills village in Thetford, and about one mile below the outlet of a certain lake, called Fairlee Lake, and upon a stream which flows from said lake ; that said mills were and always had been, since they were built, upon the same level and supplied with water from the same dam ; that the defendant at and before the commencement of this suit owned and was in possession of a saw-mill and other mills situated above the plaintiff's mills upon a dam at the outlet of said lake, at which last named mills there was a flume with gates for the purpose of letting the water from said dam and flume on the wheels of the defendant's mills, and that there is a stream about the size of the stream flowing from said lake which empties into said last named stream between the plaintiff's and the defendant's mills.

It further appeared that the plaintiff derived title to his said mills through one Erastus Bartholomew, who purchased the same in 1839, and continued to own and occupy the same until his death in about 1860, and that John Riley, David Bruce and Samuel Daniels were joint owners of the plaintiff's mills before Bartholomew purchased ; and that Riley continued to own an interest in the plaintiff's grist-mill until he sold the same to said Bartholomew in March, 1839. The said Daniels testified that he had no interest in the plaintiff's mills until after the defendant's dam was raised over the " bed-rock " as hereinafter stated. It appeared by parol testimony that Bruce owned an interest in the plaintiff's mills at the time the defendant's dam was raised over the " bed-rock."

It further appeared that one Eliphalet S. Dodge and his father, Jeremiah Dodge, purchased the defendant's mills, premises and privilege, in 1801, at which time only a saw-mill stood thereon,

and that they continued to own and occupy the same until the death of said Jeremiah in about 1824, and that the said Eliphalet continued thereafter to own and occupy the same except as hereinafter stated until his death in December, 1854 ; and that the heirs of said Eliphalet conveyed the same premises to the defendant on the 11th of January, 1855.

The plaintiff gave in evidence a copy of the deed from said heirs to the defendant, the last clause in the premises of which is as follows : " Excepting and reserving the right to draw water from said privilege for the use of the grist-mill now owned by Erastus Bartholomew, in Post Mills ; " also an act of the legislature of Vermont, passed in 1797, giving to one Aaron Post, (who purchased the defendant's mill premises August 21, 1798, and sold them to the Dodges in 1801,) his heirs and assigns, the right to raise the waters of said lake two feet by means of a dam to be built over the " bed-rock " at the original outlet of said lake, and providing for the appointment of commissioners to appraise the damages occasioned to the several land owners around the lake whose lands should be flowed by reason of this raising of the water of the lake, and also providing that the said Post, his heirs and assigns, by paying such damages so assessed should be absolved from further liability to said land owners by reason of flowing their lands as aforesaid.

Nothing was done under said act of the legislature until the fall of 1830, when commissioners were called out pursuant to the provisions thereof to view the lands around said lake before the raising of the water thereof under this act.   In the spring of 1831 the said Eliphalet built a dam over said " bed-rock " eighteen inches high, ( there never having been one there before,) in doing which he acted under the act of the legislature.   Soon after the dam was built, and the same year, the commissioners were again called out, and they appraised the damages done to the lands about the lake by the flowage caused by the building of the dam.   The plaintiff gave evidence tending to show that at or about the time the land damages were appraised, the said Riley, Bruce & Daniels, the then owners of the plaintiff's mills, and the said Eliphalet, the then owner of the defendant's mills, except as aforesaid, verbally

agreed that the lower mill owners should pay said land damages and the commissioners' fees, and that the said Eliphalet should be at the expense of building the dam over the " bed-rock," and that the lower mill owners should thereby have right to draw water from the upper dam.

The plaintiff also gave evidence tending to show that the said Riley, Bruce & Daniels did pay said land damages. The plaintiff claimed that he had the right to draw water from the defendant's dam through the gates of the defendant's flume for the use of his said three mills whenever it was necessary for their reasonable use, and that this right has been acquired by fifteen years' adverse enjoyment thereof by the former owners of his said mills in such a manner as to gain the right by prescription, and he gave evidence tending to show that as early as 1826 the owners of his said mills claimed and exercised the right of thus drawing water, and that they continued to claim and exercise the right for more than fifteen years. The plaintiff also claimed that he had the right to draw water from the defendant's dam in manner aforesaid and for the purpose aforesaid by reason of the parol agreement aforesaid, if the jury should find such an agreement as his evidence tended to show.

The plaintiff gave evidence tending to show that the defendant a short time before the commencement of this suit unlawfully interfered with the plaintiff in the enjoyment of the right to draw water from the upper dam ; and that when Riley & Bruce were owners of the lower mills ( the plaintiff's mills) and were running them, they claimed and exercised the right to draw water from the upper dam ( defendant's dam ) for the use of said lower mills, and among other witnesses introduced by the plaintiff on that point was Stephen Thomas, and in the course of his testimony tending to show such user the plaintiff's counsel proposed to show by the witness that Riley & Bruce, at the time they owned and run the lower mills, claimed the right thus to draw water from the upper dam, for the purpose of showing that such user on their part was under a *claim* of right. The defendant's counsel objected to the witness stating any thing that Bruce or Riley said. The court ruled that what they may have said in reference to this

right would not be evidence of the truth of what they said or any evidence that they had any such right, but the fact that they claimed such a right was competent to be shown, even if it necessarily involved what they said; to which the defendant's counsel excepted. (First exception.)

The witness thereupon testified that he understood from Bruce "that the owners of the lower mills paid the land damages (referring to the land damages under the act of 1797,) and that Eliphalet Dodge built the dam, and that they were to have the right of drawing water, in consequence of the arrangement, from the upper dam, and I think the lower mill was also to pay the expense of the commissioners." The court ruled that this evidence was not evidence that any such agreement or arrangement was made, or that any thing was done under it, but was only evidence tending to show the fact that he (Bruce) claimed a right to draw water from the upper dam.

The plaintiff gave no evidence tending to show any claim or exercise of the right on the part of the lower mill owners to draw water from the upper dam after the death of the said Eliphalet.

The defendant gave evidence tending to show that the said Eliphalet always denied the right of the lower mill owners to draw water from his dam through the gates of his flume, and always forbade their exercising the right without his consent. It appeared from the testimony on both sides that the lower mill owners would sometimes cause the gates of the said Eliphalet's flume to be hoisted without his knowledge or consent, and the defendant gave evidence tending to show that when it came to the knowledge of the said Eliphalet he would immediately cause them to be shut, and when he next saw the lower mill owners he would forbid their doing the like again and threaten to sue them if they did. The defendant also gave evidence tending to show that other parties while using the upper mills denied this right and refused to let the lower mill owners enjoy it, and that no such agreement was made between the mill owners as the plaintiff's evidence tended to show as aforesaid.

" The court charged the jury as to all the aspects of the case presented by the evidence, and among other things instructed

them what was necessary to give the right or easement by user. In relation to the act of the legislature and the proceedings under it, and the agreement between the owners of the upper mills and the owners of the lower mills, as claimed by the plaintiff, the court told the jury that if all was as the plaintiff's evidence tended to prove, the agreement, being verbal, did not give the owners of the lower mills, or of the grist-mill, the right to draw water from the upper dam, unless the owners of the lower mills had gained the right by use under a claim of right; that if they found the owners of the lower mills had thus exercised the right continuously and uninterruptedly for fifteen years or more, under claim of right under that contract in the manner the court had told them was necessary in order to gain a right by adverse use, they would not be prevented from acquiring the right even if the owner of the upper mills did occasionally, while the owners of the lower mills were thus enjoying the right, object or deny the right, if he did not in any way interfere with or interrupt the enjoyment of the right by them, (the owners of the lower mills,) and they enjoyed the right in *spite* of such objections as fully as if there had been no such objections or denial. To this part of the charge, so far as it relates to the effect of the objections or denial of the right, the defendant excepted. (Second exception.)

"As to the reservation in the deed from the heirs of Eliphalet Dodge to the defendant, the court told the jury that it did not create any right in the owners of the lower mills, or in the owners of the grist-mill, or have the effect to convey to them any right to take water from the upper dam, but that it was evidence tending to show that when the defendant took that deed, such a right had been acquired and then existed, so far as the grist-mill privilege was concerned, but that it was not conclusive; it was only evidence to be weighed with all the other evidence in the case bearing on the question of fact, whether such right to take water for the use of the grist-mill had been acquired. To this part of the charge (except that in which the jury are told that the reservation did not create or give any right,) the defendant excepted. (Third exception.)

"There was some evidence which tended more to show a right to draw water for the use of the grist-mill, than for the other mills of the plaintiff, and the defendant's counsel requested the court to charge the jury, that unless they found the plaintiff had a right to draw water for all his said mills, there would be such a variance from the right alleged in the declaration that the plaintiff could not recover. The court told the jury that if they found a verdict for the plaintiff, to find and specify in their verdict for

what use the plaintiff had the right to draw water, whether for all
or only for some one or more of the plaintiff's mills. The jury
returned a verdict for the plaintiff, and found that he had a right
to draw water for the use of his grist-mill only. When the de-
fendant's counsel requested the court to so charge, the court stated
that the court would instruct the jury to find specially on this
point, and the question might be raised after verdict if the verdict
should be such as to render it necessary or material. After ver-
dict and before judgment, the defendant's counsel moved for *non-
suit*, or that judgment be arrested, or for new trial, for a variance
between the right alleged and that found by the jury, and the
plaintiff moved to amend the first count of the declaration, so as
to limit the right of the plaintiff to water for the use of the grist-
mill. The court intimated that probably there was a variance be-
tween the declaration and the finding of the jury as to the extent
of the right of the plaintiff, and without deciding definitely that
question, the court allowed such amendment. The amendment
was made by striking out in the first count the words 'saw-mill
and lath-mill,' and wherever in the declaration the words 'the
plaintiff's said mills and machinery' occur, the word 'grist' is
interlined before the word mills, and the 's' of the word mills is
erased. The court rendered judgment for the plaintiff on the ver-
dict. To the decision of the court allowing the amendment and
rendering judgment for the plaintiff, the defendant excepted.
(Fourth exception)."

The portions of said original first count material to be stated
were as follows :

"For that whereas before and at the times of the committing of
the grievances   *   *   *   the plaintiff was, and from thence hith-
erto hath been and still is, lawfully possessed of a certain water
grist-mill and machinery connected therewith, saw-mill, lath-mill
and other machinery propelled by water, and certain premises
with the appurtenances, situate in   *   *   *   upon a certain
stream,   *   *   *   and whereas also the said defendant   *   *   *
had placed and erected a certain dam in and across said stream,
above the said mills and tenements of the said plaintiff, with gates
and out-lets thereto made and placed in such a manner as to al-
low the water from said lake, and flowing in said stream, to pass
through the same in its natural quantity, current and flow, along
*   *   *   to and by the plaintiff's said premises; and whereas
the said plaintiff   *   *   *   of right ought to have had and en-
joyed, and still of right ought to have and enjoy, the benefit and
advantage of the water of said stream and of said lake,   *   *   *

which had been used to run and flow, and during all that time of right ought to have run and flowed, and still of right ought to run and flow in great plenty, and in its usual and proper course, flow and current, at all times through the said gates of the defendant's said dam, unto the said mills, machinery and premises of the said plaintiff, for supplying the same with water for working, using and enjoying the said mills, machinery and premises respectively, * * * yet the said defendant well-knowing * * * to wit, on * * * shut down and fastened his said gates, * * * and refused to permit the waters of said stream and lake to pass through the same, * * * and thereby during all that time unlawfully and wrongfully *penned back* and stopped the waters of said stream and lake, and prevented the same from flowing to the said mills, machinery and tenements of the said plaintiff in their usual course, and from supplying the same with water for the necessary working thereof, as the same of right ought to have done and otherwise would have done, and by reason thereof," etc., alleging in substance that the water did not flow, and the plaintiff's business was destroyed, etc.

*S. M. Gleason*, and *D. C. Denison*, for the defendant.

The testimony of Stephen Thomas was not admissible. There is error in the court's charge as to the plaintiff's gaining a right to draw the water by a continuous use thereof for fifteen years. 36 Vt., 514; 8 Gray, 441. The reservation, in the deed from the heirs of Jeremiah Dodge to the defendant, does not tend to show an acquired right in any owners of the lower mills. The verdict cannot be sustained by the declaration. The variance between the facts found and the declaration is fatal. 1 Greenl. Ev., §§ 58, 71, 72; 3 Phillips' Ev., 494, 495. The proof must at least be commensurate with the claim. 1 Swift's Dig., side page, 691.

*C. W. Clarke*, for the plaintiff.

The amendment of the plaintiff's declaration was properly allowed. It was within the legal power of the court to allow both. as regards character and time, and so was wholly in the discretion of the court, and that discretion is not revisable by this court. Gen. Sts., 267, § 41; *Lewis* v. *Locke*, 41 Vt., 11; *Bowman* v. *Stowell*, 21 Vt., 309; *Skinner* v. *Grant*, 12 Vt., 456; *Hill* v. *Smith*, 34 Vt., 535; *Boyd* v. *Bartlett*, 36 Vt., 9; *Stephens* v. *Thompson*, 28 Vt., 77; *Montgomery* v. *Maynard*, 33 Vt., 450;

*Dana* v. *McClure*, 39 Vt., 197.: *Mandeville* v. *Wilson*, 5 Cranch, 15; *Chirac* v. *Reinicker*, 11 Wheat., 280; *Merriam* v. *Langdon*, 10 Conn., 459; *Betts* v. *Hoyt*, 13 Conn., 469; *Kellogg* v. *Kellogg*, 6 Barb., 116; *Rogers* v. *Bath*, 2 N. & M., 440. The charge of the court as to the effect of the objections made by Dodge, while he was the owner of the upper mills, against the claims of the lower mill-owners, and his denials of the right claimed, was entirely correct. *Tracy* v. *Atherton*, 36 Vt., 503; 2 Wash. R. P., 42; *Perrin* v. *Garfield*, 37 Vt., 304; Angel on Water C., § 211; 2 Greenl. Ev., § 539. The court did not err in their instructions as to the effect of the reservation in the deed from the Dodge heirs to the defendant, nor in admitting the testimony of General Thomas.

The opinion of the court was delivered by

BARRETT, J. The first exception in this case is as to the testimony given by Gen. Thomas. It was offered, and was allowed to be used, as bearing upon the question whether Bruce, while an owner of the lower dam, was claiming the right to draw water from the upper dam. What Thomas testified that Bruce told him was regarded by the county court as tending to show that Bruce was, in fact, claiming such a right. In this we think there was no error. According to the testimony of Thomas, Bruce was telling him a set of facts, and that, as the result of those facts, the owners of the lower mills were to have the right to draw water from the upper dam. It is true that Bruce did not, in express terms, say that he claimed the right, but he stated the right as existing in himself, and he stated it under circumstances, and in a way, that strongly indicated that he was doing it as a mode, and in the sense, of asserting the existence of the right in himself as an owner of the lower mills.

As to the second exception, the court instructed the jury what would be necessary to effectuate the acquirement of the right or easement claimed by the plaintiff, by adverse user. It is to be assumed that it was correctly done. The court, with reference to the contract named in the exceptions, instructed the jury that if the former owners of the lower mill, under claim of right under that contract, had exercised the right in the manner necessary to gain a right by adverse use, they would not be prevented from acquir-

ing the right, even if the owner of the upper mill did occasionally, while the owners of the lower mills were thus enjoying the right, object or deny the right, if he did not in any way interfere with or interrupt that enjoyment, and they enjoyed it in *spite* of such objection as fully as if there had been no such objection or denial. To the charge as to the effect of the objections or denial, the defendant excepted.

This exception involves only the verbal objections or denial, and not at all the acts of the owner of the upper mill, which the defendant's evidence tended to show were done in contravention of the adverse claim of right, and in interruption and prevention of the exercise and enjoyment of such right by user by the owners of the lower mill. As to that evidence, it is to be assumed that the jury were properly instructed. The fact that the flow of the water to the lower.mills was through the flume and gates of the upper mill, and so was within the control of the owner of the upper mill, gives special significance and force to the continued and uninterrupted enjoyment of the right claimed by the owners of the lower mills, as bearing on the matter of *acquiescence* on the part of the owner of the upper mill. Such enjoyment and user as the jury must have found, under the charge given by the court, must have been by the permission, in fact, of the upper mill owner, whatever he may have said about it, or about the right claimed by the owners of the lower mills. This, it seems to us, must be regarded as answering fully to the idea of the law in respect to the requirement of *acquiescence* in such cases. It is largely within the expression of POLAND, J., in *Tracy* v. *Atherton*, 36 Vt., p. 514. His denying the right and objecting to the claim of the other party, at the same time that he, in fact, was permitting the water to flow through his own flume and gates, over which he had entire control, in a manner answerable to the claim of the other party, suggests the expression of the poet in relation to one of his heroines :

"Saying ' I will ne'er consent,' consented."

'This case is different from that in 8 Gray, 441. If the question in that case had been as to the right in the defendant to have the aqueduct through the land of the plaintiff, acquired by

adverse enjoyment, that case would have been more analogous to this. But such was not the question. It was as to the right of the defendant to dig up the soil for the purpose of repairing the aqueduct. This could be acquired only by a user consisting in acts, on the part of the defendant, of going upon and digging up the soil with the acquiescence of the plaintiff. In the other case, no act by the defendant, on the land of the plaintiff, would be requisite to the acquirement of the easement. All he would have to do would be to use and enjoy, with a claim of right, what was furnished or permitted to him by the plaintiff, without any adversary act on his own part, as against the plaintiff. The present case furnishes a plain illustration. The owners of the lower mills had only to use the water as it came to them through the flume and gates of the upper mill, claiming the right to have it so come for such use. This, continuing for the requisite period, would vest the right in the lower mill owners, without any act on their part on the possessions and property of the upper mill-owners. The upper mill-owners, by permitting the water thus to run, must be regarded as acquiescing in its running, whatever they may have said by way of denying the right as claimed by the other party. In the case in 8 Gray, *supra*, the acquirement of the right claimed depended on adversary acts of the defendant upon the land of which the plaintiff was in the occupancy, and in order to render such acts effectual, it was regarded necessary that they should have been acquiesced in by the plaintiff. If he had made no objection to them, it would virtually have been acquiescence. He did object, and denied the right, and forbade the defendant to enter on his land, and ordered him and his servants off. This certainly was all the plaintiff could do to manifest want of acquiescence, and to prevent the adversary acts of user and enjoyment in virtue of which the defendant was claiming to have acquired the easement, unless he had interposed with actual force. This he was not required to do. As before suggested, we regard the exceptions as showing that the defendant had the full force and benefit of his evidence of *acts* in respect to non-acquiescence in, and interruption of, the use and enjoyment of the right claimed by the owners of the lower mills, and as presenting on this subject,

nakedly, the operation and effect of a mere verbal objection to and denial of the right thus claimed, while at the same time permitting that use and enjoyment to continue in as full measure, in every respect, as if no such objections or denial had been made. We think the court committed no error in the instructions given to the jury on this point of exception.

The third exception, as to the reservation in the deed to the defendant, January 11, 1855. It seems to us that such reservation was proper for the consideration of the jury upon the question whether such right as the plaintiff claimed was existing in the owners of the grist-mill at the time such deed was made. It might signify that and it might not. It might have been made, as suggested in the argument, because the heirs of Eliphalet Dodge may have had some notion of becoming the owners of the grist-mill property and wanted to secure for their own use the right reserved. It might have been made, not in recognition of an existing perfected right, but because the grantors knew of a claim in that respect, and for the purpose of forefending themselves from the hazard of liability upon their covenants of warranty. It was for the jury upon all the evidence to determine the view in which it was inserted and consider it as evidence, or lay it out, as they should thus determine. If they should find that it was made with reference to a right then supposed by the grantors to exist in the owner of the grist-mill, it is unquestioned that it would be pertinent and potent evidence tending to show that such right in fact had been acquired and was of force and effect.

We think this matter was put to the jury in a proper manner.

Without discussing or deciding whether there was a variance between the declaration and the fact established by the special verdict, of which I think there is considerable reason for doubting, and assuming that there was such variance, and that without amendment of the declaration a judgment for the plaintiff on the verdict would have been erroneous, could the amendment be lawfully allowed? Of course it could not, if it brought a new cause of action upon the record. It has been several times judicially said that *new cause* of action, with reference to the legality of an amendment, is not to be regarded in the same sense, nor settled

by the same rule, as when it is involved in questions of pleadings and evidence. The *occasion* for bringing this suit was what the defendant had done to diminish the usual flow of water to and by the lower mills, thereby causing damage to the plaintiff. In order to maintain a suit for this, it was necessary for the plaintiff to set forth and show a right in himself to have the water flow as it had been accustomed, and some interest in himself to be served by having it so flow, and a detriment to such interest by the conduct of the defendant in preventing such flow. This he did in his declaration, and alleged, as such interest, the working, using, and enjoying his several mills and premises. As constituting his cause of action, so far as it was depending on the acts of the defendant, he set forth that the defendant shut down and fastened his gates and thereby penned back and stopped the waters flowing to said mills and machinery in their usual course, and from supplying the same with water for the necessary working thereof as the same of right ought to have done, and otherwise would have done ; and as constituting the damage, he sets forth that he was thereby hindered and prevented from using his said mills and machinery, etc., in so ample, extensive and beneficial a manner as he otherwise might and would have done. The amendment proposed and allowed was to limit the plaintiff's right of recovery to the damage he suffered in respect to his grist-mill. But this did not require or depend upon any fact or any averment in the declaration different from what it originally contained, except in this particular. The case under the amended declaration consisted of precisely the same matters of fact, to be shown by the evidence, as under the original declaration. The extent of the plaintiff's right was to be determined in view of the facts proved. The evidence tended to show the plaintiff's right to the full extent in every particular set forth in the declaration. It did show it in one particular set forth in the declaration, to which precisely the same evidence was pertinent, *pro* and *con*, as was pertinent to show it in the other particulars. The amendment then was not bringing upon the record, or giving occasion for evidence of any other set of facts than those contemplated and pertinent under the original declaration as constituting the ground of the plaintiff's right, or of the defendant's

violation of it. The only thing varied by the amendment is in respect to the averment in the declaration, that the plaintiff had and ought still to have of right such flow of the water, for supplying water for the working, using and enjoying said mills, machinery and premises respectively; and in that respect the averment "of right" is limited by the amendment to the grist-mill.

Now it seems to us that what was said and held in *Hill* v. *Smith et al.*, 34 Vt., 535, and in *Boyd* v. *Bartlett*, 36 Vt., 9, is ample to show that, as to the subject matter of the amendment, it was within the province of the court to allow it to be made. Nothing need be added to those cases either to develop the principle or to illustrate its application to the present case, provided the making of the amendment was seasonably moved. Other cases cited in the argument tend to the same result as those above named.

The amendment was moved and allowed after a special verdict had been returned, and before judgment. The Gen. St., 267, § 41, provides that the court may, *at any time*, permit, etc. This certainly is broad enough to authorize the court to allow any amendment that, in point of subject-matter, is proper to be made, to be so made at any time while the case is in the hands of the court, and in the process of being made up and perfected for judgment. Every practical reason, looking to substantial justice as the end of administering the law, requires that this should be so. Such has been the view of the courts, as shown by the cases. See 13 Conn. Rep., 469; 6 Barb. Rep., 117; 2 N. & M. Rep., 440. In *Winn* v. *Averill*, 24 Vt., 283, an amendment was allowed by striking out a party's name from the process and declaration, after an auditor's report had been filed in court showing that he had been improperly inserted. In *Montgomery* v. *Maynard*, 33 Vt., 450, an amendment of vital importance was allowed after the evidence on both sides was closed. The language of POLAND, J., on this subject, has forcible pertinency to the present case. See *Dana* v. *McClure*, 39 Vt., 197. We refer with special commendation to the language of PIERPOINT, C. J., in the close of the opinion in *Lewis & Co.* v. *Locke*, 41 Vt., 11; *Stephens* v. *Thompson et al.*, 28 Vt., 77; *Bowman* v. *Stowell et al.*, 21 Vt., 309.

On the whole, we are satisfied that the judgment of the county court should be affirmed.