The Chicago and Northwestern Railway Company

*v.*

Smith Hoag.

1. Adjacent owners—*freezing of water thrown upon premises of another.*
Where a railway company turns its waste water from a tank, upon the prem-
ises of another, where it spreads and freezes, doing damage to the property of
the owner, the company can not claim exemption from liability on the ground
that the freezing of the water was an act of nature, as such a result from its
wrongful act might have been foreseen.  To excuse from liability for an act
of nature in combination with the defendant's own act, it must be such as
could not have been foreseen and prevented by the exercise of ordinary care
and prudence.

2. Same—*where one is in the use of a street for private purposes.*  Where a
railway company has been in the habit of running the waste water from a
tank, upon a street of a city for some time, a party can not acquire a right of
action against the company by going upon the street under permission from
members of the city council and piling lumber there in such manner that the
water from the tank in its usual course will flow upon it.  If the company,
after such use of the street by the party, should turn the water upon the street
through a different channel than that in which it was accustomed to run be-
fore, and thereby cause damage, an action might lie.

3. Possession—*as evidence of title.*  Where a railway company has a track
over a part of a lot and the balance of the lot is occupied by another under
claim of title, the possession of the company will not extend and be evidence
of title beyond its actual occupancy, where no paper title is shown.  An em-
bankment constructed along its track by the company, will constitute posses-
sion of the ground covered by it.

4. Damages—*when partly caused by defendant.*  Where the owner of a lot
sustains damage from the flowing of water upon the same and its freezing,
and the proof shows that most of the water so thrown upon the premises is
attributable to the act of the defendant in suffering it to escape from a tank,
and a part was the flowing of surface water in its natural course, it is not
proper to instruct the jury that if they can not determine from the evidence
what part of the damage was occasioned by the water suffered to escape from
the defendant's tank, they can not find more than nominal damages in favor
of the plaintiff.  In such a case the jury should be left at liberty to estimate
as best they can how much of the whole damage was occasioned by the water
from the tank.

5. Same—*when recoverable for such as accrue after suit is brought.*  Where a
wrongful act is done, producing an injury, which is not only immediate, but

from its very nature is permanent, and must continue to produce injury independent of any subsequent wrongful act, then all damages resulting, both before and after suit brought, may be estimated and recovered in the action.

6. Where a railroad company, before suit brought, wrongfully suffered the water escaping from its tank to flow upon the plaintiff's lot, where it spread and froze several feet deep, and the ice did not melt until after the commencement of the suit, it was *held*, that the plaintiff might recover for the damages occurring after suit brought for the wrongful act of the defendant done before suit.

7. Prescription—*right to flow water on land of another.* To make the use of an easement in land of another for twenty years conclusive of the right, the use must be adverse, uninterrupted and with the knowledge and acquiescence of the owner of the land, and each of these qualities or ingredients essential to the maintenance of the claim, is open to contradiction and liable to be disproved.

8. To prevent a right by prescription in or over the land of another, it is not necessary that the owner of the land shall have asserted his right in opposition to the use by suit at law, or by any act of violence in resistance of the use, but it is sufficient if the owner objects to the use and demands that it be stopped, and where the right is claimed by a railway company to flow water upon the lot of another by user for twenty years, the owner's complaint of the act within that period to the station agent of the company, and demand that it be stopped, will defeat the right claimed, as rebutting the presumption of a grant.

9. Same—*as against the public.* A railway company can acquire no prescriptive right to let the waste water from its tank on to a public street of a city, as against the city, or one in its legitimate use as a street.

Appeal from the City Court of the city of Elgin; the Hon. Frank M. Annis, Judge, presiding.

This was an action against the Chicago and Northwestern Railway Company to recover damages for causing and permitting water to flow and escape from a water tank of the defendant, upon premises of the plaintiff. The plaintiff recovered a verdict and judgment for $325 damages, and the defendant appealed.

The general facts of the case are as follows:

. The Chicago and Northwestern railway passes through Elgin on the west side of Fox river, in a northerly and southerly course, nearly parallel to, and about two blocks west of the

river—the ground rising gradually from the river up to and beyond the road, so that at the place in question the road-bed, depot and water tank are some forty feet above the level of the stream.

The appellee is a contractor and builder residing at Elgin, and his lot on which his lumber was piled and buildings are erected abuts on and lies immediately east of the road. Appellee's lot is bounded on the north by South street. Just west of its main track the company has, with the consent of the city authorities, placed a platform entirely across South street, and that part of this street between the track and State street, the next street east, is impassable by teams, and not used by the public. Appellee's dry-house and a part of his lumber were on this portion of this street, which he thus used by consent of members of the city council, the chairman of the street committee among them.

The water tank, which is twenty-five to thirty feet west of appellee's lot, is located on the west side of the main track; it is in the upper part of a brick building some ten feet above the level of the track, and is supplied with water for engines from a spring on higher land about half a mile to the west. From this spring the water is conducted through underground pipes to a reservoir on the opposite side of the street west of the depot, and from the reservoir the water runs, in the same way, into the tank, which is fifteen or twenty feet above appellee's premises. Engines take water on the west side, and the surplus water runs out through a waste pipe on the east side of the track. In the summer, and often in the winter time, as appears from the testimony, but little water overflows, and that usually runs through a box or chute under the main track over the embankment some twelve or fifteen feet high, and falls on appellee's lot or into South street. During the cold weather of January, 1875, the water was permitted to escape in large quantities from this tank through the overflow pipe. This was done, as said by the depot agent of the company, to prevent the water from freezing up and

bursting the pipes. This water continued to run in this way, at intervals, during the months of January and February, 1875. There was a ridge of ice between the main track and the east edge of the embankment, and this water would have frozen around the base of the tank or run off north into the street gutter and frozen there, had not the company's workmen cut a channel or ditch through this ridge and thus let the water run (but through the accustomed channels in which it had previously passed, according to testimony of appellant's witnesses) on to appellee's premises, where it spread out and froze forming a body of ice over appellee's premises and the adjoining part of South street varying from two to four feet in thickness. The suit respects the damages resulting from this formation of ice to lumber and material situated in the storehouse and in the carpenter shop of appellee, both being on the same lot, and to lumber in the dry-house of appellee, situate in South street, and to lumber piled in the street, and from inconvenience to business. On March 1, 1875, two of the company's men came out from Chicago, and by digging a hole, or as they call it a "cess-pool," at the base of the water tank, provided an escape for the water through the gravel, where it has since run.

Mr. A. M. Herrington, and Mr. B. C. Cook, for the appellant:

The injury complained of was not attributable alone to the act or omission of the defendant, but to the act of nature in causing the water flowing upon the plaintiff's premises from the tank, and of the surface water, to freeze, which was the proximate cause of the injury, and for which the defendant was not liable; citing Wharton on Negligence, 115, 939, *Vedder* v. *Hildreth,* 2 Wis. 427, *City of Brooklyn* v. *Brooklyn City Railroad Co.* 57 Barb. 497, *The People* v. *Mayor of Albany,* 5 Lan. 524, *Finsmans* v. *Belvidere Del. Railroad Co.* 2 Dutch. 148, and *Railroad Co.* v. *Reeves,* 10 Wall. 189.

The following cases clearly establish the rule of damages in actions of this kind, and show that the plaintiff can only recover for injuries actually sustained before suit brought. *Cobb et al.* v. *Smith et al.* 38 Wis. 37; *Blunt* v. *McCormack,* 3 Denio, 283; *Mahon* v. *New York Central Railroad Co.* 24 N. Y. 658; *Beckwith* v. *Griswold,* 29 Barb. 291; *Town of Troy* v. *Cheshire Railway,* 3 Foster, 83; *McKeyhon* v. *Lee,* 4 Robertson, 450; *Thayer* v. *Brooks,* 17 Ohio, 489; *Duncan* v. *Morkley,* 1 Harper, 276.

We maintain that twenty years occupancy of the ground, and use of water in the way it was used, give the company the right to its use for that purpose. *Buckland* v. *Truell,* 54 N. H. 122; 2 Hunter, 633; *Naffle* v. *Porter,* 61 Barb. 130; *Sweet* v. *Cutts,* 50 N. H. 437; *Earl* v. *Hart,* 1 Beasly, 280; *Vail* v. *Mix,* 74 Ill. 127; *City of Peoria* v. *Johnson,* 56 id. 45; *Chicago, Rock Island and Peoria Railroad Co.* v. *Joliet,* 79 id. 27; *Kimball* v. *Ladd,* 22 Vt. 747.

Mr. John W. Ranstead, for the appellee:

It is believed to be a correct proposition of law, that a wrong-doer is not only responsible for the first result of his wrongful act, but also for every successive result of that act, which could have been foreseen. *Fent et al.* v. *Toledo, Peoria and Warsaw Railway Co.* 59 Ill. 351; *Atchison, Topeka and Santa Fe Railroad Co.* v. *Stanford,* 12 Kan. 354; *Weick* v. *Lander,* 75 Ill. 93; *Panton* v. *Norton,* 18 id. 496.

The maxim that every man shall so use his own as not to injure another's property, may be invoked, and applies with peculiar aptness and force to questions relating to the diversion and management of water. Year Books of 6 E. 4, fo. 7 Pl. 18—; *Stone* v. *McAdams,* 2 Scam. 69; *Nevins* v. *City of Peoria,* 41 Ill. 510; *Railway lands* v. *Fletcher,* L. R. 3, H. L. 320; *Rylands* *Wilson* v. *New Bedford,* 108 Mass. 261; *Cahill* v. *Eastman,* 18 Minn. 324.

Upon the point that the proximate cause of the injury was the act of God, or *vis major,* see, as showing what is the

act of God and what is not, *Chicago and Northwestern Railroad Co.* v. *Sawyer,* 69 Ill. 289, *Nugent* v. *Smith,* L. R. 1, C. P. D. 482, (18 Am. Rep. 618, note.)

As to the injury caused to the plaintiff's lumber placed in the street by permission of the city authorities, the fact of possession of the street was relied on as justifying a right of recovery as to all damages done to the property by any one except the true owner. *Moore* v. *Iman,* 42 Ill. 150; *Webb* v. *Sturtevant,* 1˚ Scam. 181; *Halligan* v. *Chicago and Rock Island Railroad Co.* 15 Ill. 558; *McCormick* v. *Huse,* 66 id. 315.

As to the prescriptive right claimed, the following authorities are cited: 2 Wash. Real Prop. 44, 442, (2 ed.); *Warren* v. *Town of Jacksonville,* 15 Ill. 241; *Dimon* v. *People,* 17 id. 422; *Daniels* v. *People,* 21 id. 440; *City of Quincy* v. *Jones et al.* 76 id. 231.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

That considerable damage resulted to appellee from the freezing upon his premises of water which flowed thereon from the water tank of the company, is established by the proof. It appears, too, that the damage was sustained in consequence of the freezing and the detention thereby of the water; that but for that, the water would have flown down and off the premises without injury. It is thence claimed that the damage was not the proximate result of the defendant's act of turning the water upon the land, but of the freezing of the water, which was the act of God. But to claim exemption from liability for the consequences of such an act of nature, it must be such as could not have been foreseen and prevented by the exercise of any ordinary care and prudence. *Nugent* v. *Smith,* 17 Eng. Rep. 330, L. R. 1, C. P. D. 423; *Panton* v. *Norton,* 18 Ill. 496. Appellant must be held to have known that the water would freeze upon appellee's land at the time it was turned on it, it being a fact occurring in the course of nature, and be chargeable with the consequences resulting from the known action of frost in freezing water in combina-

tion with appellant's own act.   The injury was one which might reasonably and naturally have been expected to result.

A point is made by appellant as to the ownership of the lot in question.   It is described in the declaration as "lot 9 of block 31, etc., except such part thereof as is now owned and occupied by the said defendant for a right of way."   Neither party introduced any deed or other written evidence of title; and it is asserted that the ground upon which appellee's store-house stood having been occupied by the railroad company for over twenty years preceding the building of the storehouse there by appellee—both parties claiming title by occupancy—the railroad company by its embankment—the company must be held *prima facie* to be the owner thereof.   The possession of the company would not extend, and be evidence of title, beyond its actual occupancy.   The evidence shows, that about two years previous to the time of the damage complained of, appellee had removed this store-house from another place upon the lot to a place nearer the railroad embankment; that at one spot the embankment was dug out some three or four feet, and that this building was so placed that its southwest corner stood at or within this excavation and near to the point where the box or chute, which conducted the water from the tank over the embankment, opened upon the lot.   Had the evidence shown that this corner of the store-house stood within the excavation made, and upon ground which had been covered by the embankment, and that the building and its contents suffered the damage solely in consequence of a portion of the building standing upon that ground, then this claim of title would be of avail, and we should say there could be no recovery of damage in respect of the store-house.   But we do not understand the evidence as presenting such a case, but as warranting the inference that the damage would have been suffered if the building had stood elsewhere upon the lot. There is no instruction raising any question upon this point.

It appears, from the evidence, that the whole of the water which is claimed to have damaged appellee did not come from

the tank, but that to some extent it was surface water which flowed down from the hillside above, and in view thereof, the following instruction was asked by appellant, the refusal to give which is assigned as error:

"5.   If the jury believe, from the evidence, that any damage done to plaintiff's property, if any such is proven in evidence, was a combined result of an action of surface water running in a natural channel, and of the water escaping from defendant's tank, then the plaintiff can not, in any event, recover for any damage he may have suffered in consequence of the flowing of such surface water; and if the jury can not, from the evidence, determine what part or portion, if any damages, was occasioned by the water escaping from the tank, then, in no event can they find for the plaintiff more than nominal damages, on account of damages he may have suffered from the flowing of the water."

. The first clause of the instruction is well enough, but the last one is objectionable as liable to mislead the jury to understand that unless they could determine to a certainty the extent of damage from each of these sources, they should find only nominal damages for the plaintiff.   The evidence justified the belief that the water came mainly from the tank, and the plaintiff was entitled to recover for all damages from that source; and if the jury could not separate and distinguish between the several amounts of the damage caused by the water from the tank and the surface water respectively, they should have been left at liberty to estimate as best they might, from the evidence, how much of the whole damage was occasioned by the water from the tank.   In *Ogden* v. *Lucas*, 48 Ill. 493, an instruction of a similar character, as we take it— the instruction not being given in the report of the case—was condemned, and see *Washburn* v. *Gilman*, 64 Me. 163.   We find no error in refusing this instruction.

It is objected that there was a recovery for damages suffered after the commencement of the suit.   The suit was commenced

April 7, 1875. The ice upon the premises did not melt and run off until the latter part of May following, and as a consequence of the melting of the ice, the premises were made wet, slippery and muddy, wherefrom was an inconvenience and detriment to business. This is the subsequent damage referred to. It was proved, that on March 1, 1875, the hole or cesspool was dug at the foot of the tank, in which all the surplus water escaped from that time.

All the ice had formed on appellee's property before that time, so that the water and ice which caused the damage were on the premises before the commencement of this suit. It is true, that as a general rule, judgments refer to the situation of the parties at the commencement of the action. But as recognized in *Cooper* v. *Randall*, 59 Ill. 321, when a wrongful act is done which produces an injury that is not only immediate, but from its very nature is permanent, and must continue to produce injury independent of any subsequent wrongful act, then all damages resulting both before and after the commencement of the suit may be estimated and recovered in one action; and see Sedgw. on Damages, 102; *Felter* v. *Beal*, 1 L. Raym. 339.

In this case, the injury sustained by appellee between the commencement of the suit and the trial, was not from any wrongful act done by appellant during that time, but followed from acts done before the suit commenced, and was properly recovered for in this action.

There was a claim of a prescriptive right to flow waste water from this tank over these premises, set up by the appellant.

It made proof that the tank had been there, and had discharged its surplus water in the same way, for more than twenty years.

For the purpose of showing that this use had not been acquiesced in during that period, one Sterricker gave testimony that he purchased this lot in 1858 and sold it to appellee in 1872; that he complained to depot agent Sprague about water running over the lot; that he spoke to him several

348          C. & N. W. Ry. Co. *v.* Hoag.          [Sept. T.

Opinion of the Court.

times; that for the first thirteen years it was not so bad; it was worse every winter, for several reasons; that he called the depot agent's attention to it and complained; that he told him he wanted it stopped.

The station grounds at Elgin were occupied by the railroad company in 1851, and have been since continuously occupied.

As bearing upon the question of prescription, the court below gave three instructions on behalf of the plaintiff, which are complained of as being erroneous. They were in substance as follows:

1.   That the defendant could acquire no prescriptive right to let the waste water from its tank run on to a street of the city of Elgin.

2.   That if Sterricker, while he owned the lot, objected or complained to the agent of defendant because of his premises being so flowed with water, it prevented the defendant from obtaining a prescriptive right.

3.   That if the plaintiff was at the time in quiet possession of a part of South street, and had erected a dry-house and piled lumber therein, defendant is liable for any damages caused such lumber to the same extent that it would be in case plaintiff owned the premises where the lumber was so stored.

It is contended that the objection and complaint made by Sterricker would not prevent the prescriptive right from accruing, if there was no act done.    Upon this subject it is laid down in Washb. Easem. & Serv., 3d ed., p. 131, that the use and enjoyment of what is claimed, must have been adverse, under a claim of right, exclusive, continuous, uninterrupted, and with the knowledge and acquiescence of the owner of the estate in, over, or out of which the easement prescribed for is claimed, and see p. 162; and 2 Greenlf. Ev. § 539 is to like effect.    In *Smith* v. *Miller*, 11 Gray, 145, it is said that in order to make the use of an easement in another's land for twenty years conclusive of the right, the use must be adverse, uninterrupted, and with the knowledge and acquiescence of

the owner of the land, and that each of these qualities or ingredients, essential to the maintenance of the claim, is open to contradiction and liable to be disproved. In *Nichols* v. *Aylor*, 7 Leigh, 546, where, though one had flowed another's land for more than twenty years, it appeared that the latter had complained thereof, and denied the right so to do, it was held that it rebutted the presumption of its having been enjoyed under a grant. And so in *Stillman* v. *White Rock Co.* 3 Woodb. & Min. 549, where it appeared that the party against whom the prescription was claimed had during the time remonstrated against the use, and consulted counsel for a prosecution therefor. And in *Powell* v. *Bagg*, 8 Gray, 441, where the defendant claimed the easement of an aqueduct across the plaintiff's land, it was held, that if the owner of the land, being upon it, forbade the other party to enter upon the land and make use of the aqueduct, it was enough to prevent his acquiring an easement by such use and enjoyment, which had been for thirty-eight years; that to have one gain an easement, it not only must be claimed adversely, but it must be acquiesced in by the owner of the land, under a claim of right. We do not suppose the circumstance of the place where the forbiddance was made, whether on or off the land, to be material. In *Warren* v. *The President, etc., of the Town of Jacksonville*, 15 Ill. 241, this court said, a right by prescription can not be raised without the consent of the owner; but the use may be so long unobjected to as to authorize the finding of an implied consent, and to raise a presumption of consent, and even of a grant.

Although there has been cited the case of *Kimball* v. *Ladd*, 28 Vt. 747, which is somewhat to the contrary, and *School District* v. *Lynch*, 33 Conn. 334, is in the like direction, we do not think it necessary to prevent the gaining the right by adverse use which is claimed, that the plaintiff should have asserted his right in opposition thereto by suit at law, or by any act of violence in resistance of the use.

It is urged further, that even if such objections as made in this case would avail to bar a prescriptive right, they were not made to the proper person, being made to the depot agent —that they should have been made to the person who had charge of the water tanks and wind mills, or to the division superintendent, or to the general superintendent. We are of opinion that the complaints of this use of the lot, in flowing water upon it, and the demand that it should be stopped, which the evidence shows were made in this case by Sterricker to the depot agent, sufficiently disproved acquiescence in such user, and thereby an essential element of a right to an easement by adverse use was shown not to exist—that the presumption of a grant was rebutted, and the instruction was properly given.

But the instruction that the defendant was liable for any damages caused to the lumber of the plaintiff in South street to the same extent as it would be in case the plaintiff owned the premises, we regard as erroneous.

The plaintiff had no right in South street, no right to place a dry-house or pile lumber therein; individual members of the city council or the chairman of the street committee could not give him such right.

The tank had been erected, and the water flowing from it as it did, a long time before the street was thus occupied by the plaintiff. Defendant was, in this actual user, prior in time, and therefore, as between themselves, superior in right to the plaintiff.

We do not consider that the plaintiff, having no right in the street, could thus secure a right of action against the defendant by going on the street and piling lumber there in such manner that the water from the tank, as it was being caused to run by defendant and had been for a long time, would flow on to it. It was but his own folly to thus put his property in a place of exposure to such a source of damage. See *Illinois Central Railroad Co.* v. *Allen,* 39 Ill. 205, *Toledo, Wabash and Western Railway Co.* v. *Hunter et al.* 50 id. 325.

Had the plaintiff owned the premises it would have been different. He might justifiably have placed the lumber anywhere upon his own land. The instruction, we think, could only be justified upon the assumption that the railroad company had turned the water upon the street through a different channel than that in which it had before been accustomed to run, and that the damage was caused solely therefrom. But the evidence, at least that on the part of appellant, did not warrant such an assumption.

That the defendant could acquire no prescriptive right to let the waste water run from its tank on to a street of the city of Elgin, although true as against the city, or one in the legitimate use of the street, as a street, (*City of Quincy* v. *Jones et al.* 76 Ill. 231,) it would be otherwise as against this plaintiff here, and the instruction in that respect should have been refused as inapplicable to the present case.

For the errors indicated the judgment will be reversed and the cause remanded.

*Judgment reversed.*